Harold Birns, J.
The defendant Trief, a former New York City police officer, one of several defendants charged under the former Penal Law with the crimes of conspiracy and accepting unlawful fees, moves to suppress evidence admittedly obtained by interception of telephonic communications (wiretapping) and eavesdropping (bugging).[1] The defendant also moves to dismiss *273 the indictment for failure to prosecute.
The placing of the indictment of the defendant and others on the trial calendar obliged this court to consider the motion to suppress pursuant to the order of Mr. Justice Postel of May 28, 1969. The hearing on the said motion did not occur until June 2, 1970 and briefs have now been submitted by each side.
I
The defendant and others were indicted on June 28, 1968 following a lengthy investigation, which began in 1960 into organized unlawful gambling. The nature of this investigation required utilization of ‘1 electronic surveillance ’ ’. Numerous court orders and renewals were obtained, the last order expiring in July, 1965.
Belying upon two recent decisions of the United States Supreme Court, Lee v. Florida (392 U. S. 378 [June 17, 1968]), and Fuller v. Alaska (393 U. S. 80 [Oct. 28,1968]), the defendant Trief asserts that the evidence so procured by telephonic interceptions from 1960 to 1965 may no longer be received in evidence, inasmuch as such procurement violated section 605 of the Federal Communications Act of 1934 (U. S. Code, tit. 47, § 605).
The District Attorney, conceding that the Lee and Fuller decisions (supra) proscribed the use of such evidence as violative of the said section 605, asserts that by the adoption of the Omnibus Crime Control and Safe Streets Act of 1968 (82 U. S. Stat. 197 to 239; Public Law 90-351, June 19,1968) (hereafter referred to as the Omnibus Act), Congress repealed said section 605. Hence, the District Attorney argues that because said section 605 “ is no longer viable ”, there is no present bar to the receipt of such evidence, and inasmuch as the orders authorizing interception and divulgence were obtained during the years when such State-authorized orders were lawful under the decision of the United States Supreme Court in Schwartz v. Texas (344 U. S. 199 [1952]), the issues of this motion should be resolved under the law as it then existed.
The following brief resumé and chronology of some of the leading cases involving ‘ ‘ wiretapping ’ ’ and construing section 605 are necessary for an appreciation and resolution of the contentions of the parties thereto.
In 1928, the first of these cases, Olmstead v. United States (277 U. S. 438), was decided. The Supreme Court of the United States held that tapping telephone wires and using such inter *274 cepted messages did not constitute an unreasonable search and seizure under the Fourth Amendment, inasmuch as no trespass into a constitutionally protected area and no seizure of anything tangible had occurred.
In 1928 no Federal statute governed wiretapping. Section 605 in its original form was enacted in 1934, and provided ‘1 no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, report, effect, or meaning of such intercepted communication to any person ”. (IT. S. Code, tit. 47, § 605.)
In 1937, the Supreme Court held in Nardone v. United States (302 U. S. 379), that evidence obtained by wiretapping in violation of section 605 was inadmissible in Federal courts. This ruling was not based on constitutional grounds, but rather on the court’s supervisory powers over Federal lower courts and Federal officers.
In 1939, in a later appeal by Nardone (308 U. S. 338), the Supreme Court went further, holding that section 605 not only bars evidence obtained directly by wiretapping, but also barred evidence obtained by the use of leads secured by wiretapping. In that same year, in Weiss v. United States (308 U. S. 320), our highest court held that section 605 prohibited the divulgence of intrastate as well as interstate calls.
In 1942, in Goldstein v. United States (316 U. S. 114), the Supreme Court held that only a party to a tapped conversation had standing to object to evidence so obtained.
In 1952, in Schwartz v. Texas (344 U. S. 199, supra) the Supreme Court ruled that although it was a Federal crime for State officers to divulge wiretapping evidence, section 605 did not render such evidence inadmissible in a State court. The Supreme Court, observing that Congress had not, by enacting said section 605, intended to impose a rule of evidence on State courts barring the acceptance of wiretap evidence, suggested, however, that such wiretapping activity by State law enforcement officers violated that section and was punishable under applicable Federal penal statutes (Schwartz v. Texas, supra, pp. 201-203).
In 1957, the Supreme Court held in Benanti v. United States (355 U. S. 96) that wiretapping evidence obtained by State officers under sanction of State law, i.e., by court orders authorizing such interception and divulgence, could not be received in Federal trials.
Also, in 1957, in Rathbun v. United States (355 U. S. 107), the Supreme Court held that section 605 was not violated when police officers listened in on a telephone over an extension with per *275 mission of one party to.the conversation, inasmuch as there was no forbidden u interception ”,
Benanti (supra) presaged Lee v. Florida (392 U. S. 378, supra) where on June 16,1968 the Supreme Court specifically overruled Schwartz v. Texas (supra) and finally held inadmissible in State criminal trials evidence violative of section 605. And within four months, in October, 1968, in Fuller v. Alaska (393 U. S. 80, supra) the Supreme Court applied the exclusionary rule enunciated in Lee (supra) to trials in which such wiretap evidence is sought to be introduced after the date of the Lee decision.[2]
In Lee (supra) the court expanded its previous applications of section 605 so as to preclude the receipt of wiretap evidence at State as well as Federal trials and declared that the courts of the land, Federal and State, were bound to obey ‘ ‘ the laws of the United States 5 5. Commenting upon continued reliance by State authorities on the ruling in Schwarts v. Texas (supra), explaining its reason for overruling that case, the court declared ‘t that nothing short of mandatory exclusion of the illegal evidence will compel respect for the federal law ‘ in the only effectively available way- — -by removing the incentive to disregard it.5 55 (Lee, supra, pp. 386-3S7.)[3]
And while it is noted that in 1969 in Kaiser v. New York (394 U. S. 280), the court affirmed a conviction predicated on wiretaps obtained under a State order in 1964 (which order, as here, was obtained prior to the adoption of the Omnibus Act of 1968) the court was careful to point out that the trial in the Kaiser case *276 occurred prior to its ruling that the Lee decision (supra) was only to be applied prospectively (Fuller v. Alaska, supra).
None of the latter cases (Lee, Fuller, or Kaiser, supra) has considered the claim now argued by the District Attorney that said section 605 was repealed by the enactment of the Omnibus Act of 1968. Accordingly, it is now necessary to consider whether section 605 was actually repealed by the adoption of that statute.[4]
The Omnibus Crime Control and Safe Streets Act of 1968 was intended ‘ ‘ to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings.” (Public Law, 90-351, § 801, subd. [b]; vol. 1, 1968, IT. S. Codé Cong, and Adm. News, p. 253.)[5]
Congress simultaneously reconsidered section 605 of the Federal Communications Act of 1934 by including, in the Omnibus Bill, section '803 relating to ‘ ‘ unauthorized publication of communications ”. Said section 803 of the Omnibus Bill and said section 605 are identical.
Section 605 was not repealed, as the District Attorney urges. It was amended. It is still viable. The interception and divulgence of telephonic communications are still outlawed, ‘ ‘ Except as authorized ” by the Omnibus Crime Control Bill (U. S. Code, tit. 47, § 605, as amd. on June 19, 1968). This was the declared intent of Congress (Sen. Rep. No. 1097, as reported in vol. 2, 1968, U. S. Code Cong, and Adm. News, supra, p. 2196).
Thus, this court is obliged to hold that, as to the telephonic interceptions made by police officers in this case under court authorizations during the years 1960-1965, the prospective application of Lee v. Florida (supra) as enunciated in Fuller v. Alaska *277 {supra) proscribes their introduction at a trial, and hence to this extent the motion of defendant Trief must be granted.[6]
II
A different conclusion, however, is required of that branch of the motion addressed to the suppression of evidence obtained through eavesdropping [bugging]. The technique of ‘ ‘ bugging ” by police officials herein did not involve the interception of telephonic communications. Therefore, consideration of this second branch of the motion does not require a consideration of said section 605 of the Federal Communications Act of 1934.
This branch of the motion, however, does require consideration of the law applicable to 1 ‘ bugging ’ ’ at the time the orders authorizing such police activity were obtained.
The said eavesdrops were authorized by orders issued by Justices of this court during the years 1960 to 1965, pursuant to section 813-a of the Code of Criminal Procedure.
In Berger v. New York (388 U. S. 41 [1967]), section 813-a was declared unconstitutional in relation to ‘ ‘ bugging ’ ’; and in People v. Morhouse (21 N Y 2d 66) our highest court held that Berger was not to be given retroactive effect. In Morhouse, however, the Court of Appeals did state (p. 77): “ The prosecution’s conduct in obtaining and carrying out these eavesdrop orders, and the orders themselves, are to be tested only against the standards reasonably believed applicable at the time such orders were obtained and this conduct occurred.”
Accordingly, the defendant, now having in his possession copies of all affidavits, orders and inventories by virtue of the order of Mr. Justice Postel, may submit to this court, upon due notice to the District Attorney, such affidavits and orders as the *278 defendant believes fail to conform to the standards governing eavesdropping at the time such orders were issued, for appropriate examination in connection with the current motion to suppress (see People v. Griffin, N. Y. L. J., Sept. 1, 1970, p. 2, col. 4).
Ill
Inasmuch as the indictment herein was filed on Jnne 28, 1968, and the passage of time until the present was occasioned to a substantial degree by the motion of the defendant Trief, as well as other defendants, to suppress evidence as related herein, the defendant’s motion to dismiss because of failure to obtain a speedy trial is denied.[7]
This corrected decision by the court, sua sponte, is filed nunc pro tune as of September 28, 1970, the date of the original decision.

. Currently, under section 814 of the Code of Criminal Procedure, eavesdropping is defined as “ wiretapping ” or “ mechanical overhearing of conversation” as those terms are defined in section 250.00 of the Penal Law. Said section 250.00 reads as follows as far as applicable: “1. ‘Wiretapping’ means the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment. * * *
“ 2. ‘ Mechanical overhearing of a conversation ’ means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instru *273 ment, device or equipment.” See, also, “ Wiretapping electronic eavesdropping, and the police: a note on the present state of the law.” I. Younger, 42 N. Y. Univ. L. Rev., 83 (1967).

. For a more complete exposition of the problems involving interpretation of section 605 and the application of the Fourth Amendment standards to telephonic interceptions and trespassory eavesdropping, see Legislative History of Omnibus Crime Control and Safe Streets Act of 1968, as reported in vol. 2, 1968, U. S. Code Cong, and Adm. News, pp. 2154-2156, whose summary of the above cases has been utilized herein. (See, also, Matter of Interception of Tel. Communications, 9 Misc 2d 121 [Hofstadter, J.].)

. Constitutional considerations of unlawful search and seizure, i.e., Fourth Amendment rights, were not applied by the United States Supreme Court to wiretap cases at the time Schwartz v. Texas (supra) was decided in 1952. Under Wolf v. Colorado (338 U. S. 25 [1949]) the Supreme Court had held that in a prosecution for a State crime, the Fourteenth Amendment did not forbid the admission of evidence obtained by an illegal search and seizure (Lee v. Florida, supra, p. 383). In Elkins v. United States (364 U. S. 206 [I960]) “the Court repudiated the ( silver platter doctrine ’ under which evidence obtained by state officers in violation of the Fourth and Fourteenth Amendments could be received as evidence in the federal courts ” (Lee v. Florida, supra, p. 384, n. 7). With the decision in 1961 in Mapp v. Ohio (367 U. S. 643), the Wolf decision was overruled and it was “ squarely held that evidence obtained by state officers in an unreasonable search is inadmissible in a state criminal trial ” (Lee v. Florida, supra, p. 385).

. This point was touched upon in the recent case of People v. Basciano (62 Misc 2d 546 [City Ct. of Yonkers]) in holding that Lee v. Florida (supra) and Fuller v. Alaska (supra) currently bar the introduction of State wiretaps, where authorizations were obtained prior to the adoption of the Omnibus Crime Control and Safe Streets Act of 1968.

. In connection with applications and orders for the interception of wire and oral conversations, the Congress has established and utilized the standards set down in Berger v. New York (388 U. S. 41) and Katz v. United States (389 U. S. 347). (See U. S. Code, tit. 18, §§ 2516-2519; 82 U. S. Stat. 216.) Thus, the application of constitutional rights and standards under the Fourth Amendment to eavesdropping and bugging practices on Federal and local law enforcement officials, has now by this Omnibus Bill been expanded to apply to instances where orders for telephonic interception and divulgences are sought by such officials. (See Sen. Rep. No. 1097, as reported in U. S. Code Cong, and Adm. News, supra, p. 2156.)

. No avenue for a contrary disposition of this branch of the motion is opened by the decision in Desist v. United States (394 U. S. 244). That case merely held that the departure announced in the Kate case (supra), i.e., “ that the reach of the Fourth Amendment ‘ cannot turn upon the presence or absence of a physical intrusion into any given enclosure ’ ” (Desist, supra, p. 246), was to be given prospective effect. Kate and Desist were cases involving “bugging”. Indeed, in Desist the court commented upon the adoption of a rule of prospective application in cases involving telephonic interception, stating (p. 250) : “ Following this reasoning * * - we recently held in Fuller v. Alaska * * * that the exclusionary rule of Lee v. Florida * * * should be accorded only prospective application. Analogizing Lee to Mapp, we concluded that evidence seized in violation of § 605 of the Federal Communications Act was 1 no less relevant and reliable than that seized in violation of the Fourth Amendment/ and that both decisions were merely ‘ designed to enforce the federal law/ ” Significantly, Kaiser v. New York (supra) was announced on the same day as Desist (see p. 275 herein). Accordingly, Desist cannot be construed as affording a view that the United States Supreme Court did not mean what it said in Lee.

. In view of the paramount importance of the subject matter of Part I of this decision, it is noted that, under the Code of Criminal Procedure, the District Attorney has a right to an immediate appeal without further delay (Code- Grim. Pro., § 518-a, as amd. elf. June 25,1969).