Harold Birns, J.
The defendant (Indictment No. 5706-1969) moves to suppress evidence seized from (1) his person, (2) his apartment located at 1170 Ocean Parkway, Brooklyn, New York, and (3) the apartment located at 622 Bast- 11th Street, Manhattan.
Patrolman Ulsamer of the Police Department, First Division, testified that he has specialized and become expert in gambling crimes in the last 3% years as a police officer. The patrolman further stated that he had received information concerning a bookmaking operation from an informer known to him, who has been reliable in the past.
The affidavit to secure the search warrants contains two instances in which convictions for bookmaking were obtained as the result of information supplied by this informer.
The information given was that the informer was personally associated with the defendant and knows that Magaril is in the bookmaking business. In addition, the informer also stated that the defendant had been previously arrested for bookmaking. Patrolman Ulsamer examined the police records and verified this information.
Magaril described his bookmaking operation to the informer as follows:
Two telephones with assigned numbers 473-3233 and 473-1273 are located in close proximity in Apartment 13 at 622 Bast 11th Street, Manhattan. From a telephone located at his apartment at 1170 Ocean Parkway, Brooklyn, New York, the defendant places a call to the 473-3233 number between the hours of 12:00 and 2:00 p.m. and 6:00 and 8:00 p.m. This permits him to receive bets from people dialing the 473-1273 number (as will be hereinafter described). The informant further added that Magaril stated that he keeps written memoranda, of the sports bets and has a tape recorder attached to his telephone which records the conversations of the bets placed.
With Patrolman Ulsamer present and listening to the conversation, the informer called the 473-1273 number to place bets, over a period of at least 10 days. The patrolman heard the bets taken. The calls were made on a private telephone and coin-operated telephones. When the private telephone was used, Ulsamer heard no ring but a click after the number was dialed, followed by the informer placing the bet and it being accepted. The calls from the coin-operated telephones produced the same results and, in addition, the coin was returned.
*13 The patrolman then conferred with William MeGarty, a special agent for the New York Telephone Company. Mr. MeGarty, by utilizing a ‘1 pen register ’ ’, checked the telephones involved for a three-day period. He determined that 79 phone calls were made from a telephone in the defendant’s apartment in Brooklyn to the 473-3233 number in Manhattan during the hours 5:00 to 8:00 p.m. on the first two nights and between 12:00 to 2:00 p.m. on the third day. Only 12 other calls were made from the same telephone during the days in question. None were made during the above-stated bookmaking hours, and none were to the 473-3233 number. Further information revealed that numbers 473-3233 and 473-1273 were assigned to telephones in Apartment 13 at 622 East 11th Street, Manhattan, and listed in the names of two persons who could not be identified. The numbers assigned to the telephones located in the Magaril apartment were subscribed for by Alice Magaril, the defendant’s wife.
Based on the above information, both Ulsamer and MeGarty came to the conclusion that a gambling operation was being conducted with the use of a “ cheesebox ” supplementing the two telephones of the Eleventh Street address. A ‘1 cheese-box ” is an electronic and mechanical device which acts as a connection between participants seeking a direct method of telephonic communication. This device precludes the simultaneous determination of and identification of the participants to the telephone conversation. Moreover, the use of a “ cheese-box ’ ’ permits the call to be made free of charge, as it is not registered.
All the aforesaid information was presented to the Justice of this court who issued the search warrant. In addition, the Justice requested and received the name of the informant.
Patrolman Scarpati executed the search warrant at the 11th Street address. He found a “cheesebox” device, one timer, one “mix box” (soundproofer), and two telephones. He then contacted Patrolman Ulsamer by police radio. At the time, the latter was outside the apartment house known as 1170 Ocean Parkway, Brooklyn. Ulsamer proceeded to the second floor of the building. There he saw the defendant in the hallway and placed him under arrest. The patrolman then took from the defendant a gray briefcase. It is conceded that there was no arrest warrant or warrant to search the defendant. After placing the defendant in the patrol car, Ulsamer again made his way to the defendant’s apartment. He announced himself to Mrs. Magaril, showed her the search warrant, and proceeded *14 to search the apartment. He found an adding- machine, a tape recorder, a tape eraser, a demagnitizer, telephone pick-ups, a 120-volt converter, and five white pads.
The defendant seeks to suppress the evidence seized as a result of the search on the grounds that (1) there was no showing that the informant was credible or his information reliable; (2) there were insufficient grounds to arrest and search the defendant; and (3) the search warrants were illegally obtained in violation of section 605 of title 47 of the United States Code.
The defendant’s first argument is rebutted by the evidence. The affidavit upon which the search warrant was issued specifically sets forth cases in which convictions were obtained upon information originally supplied by this informer. Moreover, the informant also indicated his reliability by setting forth the number of arrests of the defendant. This information was compared with the police records and found to be accurate. Moreover, it cannot be said that the informant was nonexistent as his name was stated to the Judge who issued the search warrant.
The second argument also lacks merit.
An arrest made without a warrant is valid if the arresting officers have reasonable cause for believing that a felony has been committed and that the person arrested is the party responsible (Code Crim. Pro., § 177, subd. 4 ; People v. Malinsky, 15 N Y 2d 86, 91). Reasonable cause may be provided by the communications received from an informer as long as the information related is substantiated either by the informer’s own character and reputation or by independent verification of the information supplied (People v. Coffey, 12 N Y 2d 443, 452, cert. den. 376 U. S. 916 ; People v. Malinsky, supra).
The informer’s information concerning the defendant’s criminal record reflecting on gambling activities, the method of the gambling operation, the testimony that the telephones were most frequently used during “bookmaking hours”, are circumstances, together with the corroboration of this information and of finding the “ cheesebox ” at the 11th Street apartment after the search pursuant to a warrant, that create the reasonable cause necessary for believing a felony has been committed. Therefore, the arrest made without a warrant was valid, as was the search made at the time of the arrest. Neither the remote position of the defendant at 1170 Ocean Parkway nor the intermediate use of electronic equipment in the apartment on 11th Street can obscure the presence of probable cause in this proceeding so as to invalidate either the arrest of the defendant or to suppress the evidence seized from him and under the warrants.
*15 The defendant also argues that section 605 of title 47 of the U. S. Code (Federal Communications Act of 1934, § 605) prohibits the divulgence of the existence of telephone calls from one telephone to another obtained by use of a “ pen register ”, as brought out at the hearing on the motion to suppress. As one of the authorities for this proposition the defendant cites this court’s decision in People v. Trief (65 Misc 2d 272). In that case this court was dealing with section 605 previous to its being amended through the enactment of the Omnibus Crime Control and Safe Streets Act of 1968 (U. S. Code, tit. 47, § 605, as amd. June 19, 1968). The statute at the time of the events in this matter is divided into two parts. The first states that, except as authorized, no person receiving or assisting in receiving, transmitting or assisting in transmitting, any interstate or foreign communication by wire or radio (emphasis supplied) shall divulge the existence of such communication. It is applicable only to those directly or indirectly transmitting or receiving or assisting in the same. It is inapplicable to a special agent of the telephone company (Bubis v. United States, 384 F. 2d 643, 646 ; United States v. Covello, 410 F. 2d 536, 541).
The second part is applicable to all persons except those bound by part 1. This part, except as authorized, prohibits the interception and divulgence of the existence, etc., of radio (emphasis supplied) communications. The prohibition then does not apply to wire communications, as are involved in this matter.
There are decisions in other cases which precluded or suppressed information as to the identities of senders or receivers of telephone messages obtained by the use of “ pen registers (United States v. Caplan, 255 F. Supp. 805 ; United States v. Dote, 371 F. 2d 176.) These decisions were predicated on section 605 prior to its amendment in 1968. In my view they do not bar the opinion that, under the Omnibus Crime Control Bill, the use of a “ pen register ’ ’ under the circumstances herein is valid.
The motion to suppress is denied.