Ferguson, District Judge, dissented in part, with an opinion.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Merrill HALL, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William King NICHOLS, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Kline DEVER, Defendant-Appellant.**

Nos. 72–1841, 72–1842, 72–1737.

United States Court of Appeals, Ninth Circuit.

Oct. 19, 1973.

John J. Flynn (argued), Thomas A. Thinnes, Richard L. Parrish of Flynn, Kimerer, Thinnes & Galbraith, Phoenix, Ariz., for appellant Dever.

Benjamin Lazarow, (argued), Tucson, Ariz., for appellants Hall and Nichols.

David S. Hoffman, Asst. U. S. Atty., (argued), William C. Smitherman, U. S. Atty., James M. Wilkes, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and FERGUSON,* District Judge.

WALLACE, Circuit Judge:

 Hall, Nichols and Dever were convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and conspiracy to commit that offense in violation of 21 U.S.C. § 846. Appellants contend that the electronic surveillance of their radio-telephone conversations which led to their arrests violated the Communications Act of 1934 (particularly, 47 U.S. C. § 605), Title III of the Omnibus Crime Control and Safe Streets Act of 1968,[1] and the Fourth Amendment. Therefore, they assert that the use of the conversations should have been suppressed. The district court was unpersuaded. We reverse.

Hall had radio-telephones installed in two automobiles. In early April, 1971, a Tucson housewife, who listens to her ra-

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

1. Act of June 19, 1968, Pub.L.No. 90–351, § 802, 82 Stat. 212.

dio while doing housework, intercepted the appellants' conversations on her eight-band, 150–170 megacycle radio. The radio is not unique. The public may purchase similar sets on the open market and can listen to police and fire broadcasts, calls placed over the telephone companies' mobile telephone network, etc. After eavesdropping for less than a month, she reported what she considered to be suspicious conversations to the Arizona Department of Public Safety (DPS).

She continued to monitor the conversations and made reports to the DPS until at least May 21 when the DPS began its surveillance. Assuming that the period from the end of April until the 21st of May is not attributed to the DPS, there was still a five-week span until the appellants' arrests on July 2 during which the DPS conducted warrantless electronic surveillance of their conversations which led to their arrests.

█ The arrests and convictions are inextricably bound to that warrantless search and seizure of their conversations.[2] That the state officers made the searches and arrests and then turned the case over to federal authorities for prosecution does not prevent the question from being raised. Benanti v. United States, 355 U.S. 96, 100, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957). Therefore, affirmance of their convictions depends upon a determination of the validity of these searches.

I. *Section 605.*

█ With certain exceptions not pertinent here, 47 U.S.C. § 605 forbids any person to intercept and divulge wire or radio communications. In United States v. Sugden, 226 F.2d 281, 285 (9th Cir. 1955), aff'd per curiam, 351 U.S. 916, 76 S.Ct. 709, 100 L.Ed. 1449 (1956), we held "that unless the Congress orders otherwise" the exclusionary rule applies when non-FCC governmental agents or private individuals intercept non-public broadcasts without consent in violation of § 605. The first question before us is whether Congress has ordered otherwise.

Although only a few words were added to § 605 by the Crime Control Act,[3] the legislative history of the Act clearly states that the amended section "is not intended merely to be a reenactment of section 605. The new provision is intended as a substitute." S.Rep.No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News 2196. The legislative history also explicitly shows that Congress intended to exclude law enforcement officers from the purview of the new § 605. The Senate Judiciary Committee stated:

> The new section is designed to regulate the conduct of communications personnel. It also provides that no person not authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. *"Person" does not include a law enforcement officer acting in the normal course of his duties.* But see United States v. Sugden (226 F.2d 281 (9th 1955), *affirmed per curiam*, 76 S.Ct. 709, 351 U.S. 916 [100 L.Ed. 1449] (1956)).

---

2. The use of electronic devices to overhear a conversation is a search under the Fourth Amendment. Berger v. New York, 388 U.S. 41, 51, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

3. Act of June 19, 1968, Pub.L. No. 90–351, § 803, 82 Stat. 223. The amendment added the words "Except as authorized by chapter 119, title 18," to the beginning of § 605. Chapter 119 governs the procedure by which law enforcement personnel may secure a warrant for electronic surveillance. The government argues that this amends the section in two ways. First, that it incorporates a requirement of expectation of privacy and second, that it changes the protection of the section from the means of conversation to the conversation itself. *See* Goldman v. United States, 316 U.S. 129, 133, 62 S.Ct. 993, 86 L. Ed. 1322 (1942); *Sugden, supra*, 226 F.2d at 284. We need not reach these questions because we hold § 605 does not apply to the facts of this case.

*Id.* at 2197 (emphasis added to text). It is obvious that the legislature wanted law enforcement personnel to be governed exclusively by Chapter 119 of Title 18. Therefore, because the critical communications were intercepted by the lawmen, § 605 offers no impediment. We need not reach the question of the involvement of the housewife.[4]

II. *Chapter 119 of Title 18.*

■■ Whether the challenged interception should be suppressed demands close scrutiny of the statutory requirements concerning wire and oral communications added by Title III of the Crime Control Act. *See* Chapter 119, 18 U.S.C. § 2510 et seq. If the interception in question falls within the parameters of Chapter 119, the warrantless surveillance must be suppressed. 18 U.S.C. § 2515.

The threshold question is whether these radio-telephone conversations constitute an "oral communication" or a "wire communication." The answer is critical because the definition of oral communication includes the expectation of privacy language derived from Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In order for an oral communication to be protected by the Act, the speaker must have "an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(2). A "wire communication" has no such restriction in its definition. It is defined as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ." 18 U.S.C. § 2510(1).

Obviously, there is a reason for the more restrictive definition of oral communications. When a person talks by telephone, he can reasonably assume privacy. That assumption may often be invalid for non-wire communications. Therefore, it is incumbent upon the participants in an oral communication to make a reasonable estimate of the privacy afforded them by their particular circumstances.

The definition of wire communication is not free from ambiguity. "[C]ommunication made in whole or in part . . . through the use of facilities . . . by the aid of wire . . . between the point of origin and the point of reception . . . ." could be interpreted in several ways. For example, it could be argued that if any wire is used to aid the communication, it must be deemed a wire communication. If this were followed to its conclusion, the use of a radio would be included in the definition because some wires are contained in the radio transmitter and receiver—thus the communication would be aided "in part" by the use of wire. However, such an interpretation would be inconsistent with the language of the immediately succeeding section which permits an agent of the FCC, in certain circumstances, "to intercept a wire communication, or oral communication transmitted by radio . . . ." 18 U.S.C. § 2511(2)(b).[5]

Broadcasting communications into the air by radio waves is more analogous to carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by a wire. As with any broadcast into the air, the invitation to listen is afforded to all those who can hear. In the instant case, the eavesdroppers merely tuned their radio receivers to the proper station. It is obvious that conversations initiated from a

---

4. We note that § 605 forbids divulgence of restricted communications to "any person." As a law enforcement officer is not a "person" under § 605, it is questionable whether the communications by the housewife to the DPS would be in violation of this section.

5. It would also be inconsistent with the mutually exclusive definitions of "wire" and "radio" communications found in the Communications Act of 1934. 47 U.S.C. § 153(a) & (b).

radio-telephone more logically fall within the category of "oral communication."

By reading the sections together, we can only conclude that the Congress did not mean that every conversation aided in any part by any wire would be a wire communication. As a radio broadcast must be deemed an oral conversation, we believe it would strain the legislative intent to hold that conversations emanating from a radio telephone would not be treated similarly.

However, that does not end our inquiry. Although the record is not clear, it appears that some conversations were between two radio telephones while others were between a radio telephone and a regular land-line telephone. While the former are within the definition of oral communications, the use of a land-line telephone at one end of the conversation raises a serious question as to the defined category in which such a communication belongs. While logic may dictate that the same rule should apply when a conversation crosses the airways but initiates or terminates on a land line, we are not free to reach that result if the legislative intent is to the contrary.

The legislative history states:

Paragraph (1) defines "wire communication" to include all communications carried by a common carrier, in whole or in part, through our Nation's communications network. The coverage is intended to be comprehensive.

S.Rep.No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News 2178. Based upon this indication of Congressional intent, we are forced to conclude that, when part of a communication is carried to or from a land-line telephone, the entire conversation is a wire communication and a search warrant is required.

We realize that our classification of a conversation between a mobile and a land-line telephone as a wire communication produces what appears to be an absurd result. These conversations were intercepted by an ordinary radio receiver and not by a phone tap. Logically they should be afforded no more protection than those occurring between two radio transceivers. They should be oral communications. However, Congress's definition of a wire communication necessitates this conclusion.

This is especially ironic since Title III of the Crime Control Act contains stringent civil and criminal penalties for those who violate its provisions.[6] In other words, any citizen who listens to a mobile telephone band does so at its own risk, and scores of mariners who listen to the ship-to-shore frequency, commonly used to call to a land-line telephone, commit criminal acts.

However we have closely examined the legislative history of Title III and have found no indication of how Congress intended to treat a radio-telephone conversation.[7] In the absence of such

6. *See* 18 U.S.C. §§ 2511, 2520.

7. *See, e.g.,* S.Rep.No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. and Admin.News 2112; Hearings on Controlling Crime through More Effective Law Enforcement Before the Subcomm. on Criminal Laws and Procedure of the Senate Comm. on the Judiciary, 90th Cong., 1st Sess. (1967); Hearings on the Right of Privacy Act of 1967 Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 90th Cong., 1st Sess. (1967); Hearings on Criminal Laws and Procedure Before the Subcomm. on Criminal Laws and Procedure of the Senate Comm. on the Judiciary, 89th Cong., 2d Sess. (1966).

G. Robert Blakey, now a staff member of the Senate Criminal Laws and Procedure Subcommittee, is the acknowledged author of Title III and other related works on eavesdropping. Schwartz, The Legitimation of Electronic Eavesdropping: The Politics of Law and Order, 67 Mich.L.Rev. 454, 456–57 & n. 10 (1969). We also have studied his writings and have found no solution. *See, e.g.,* American Bar Association Project on Minimum Standards for Criminal Justice: Standards Relating to Electronic Surveillance (Approved Draft 1971); President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Organized Crime 80, 91–113 (1967); Blakey & Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame Law. 657 (1968).

an indication, we must conclude that, if the conversation involves a land-line telephone, it is a wire communication.

We have the option to use the "surely Congress did not intend" rubric and amend the statute. But usurpation of the legislative function by the courts is a basic violation of the separation of powers doctrine. We reject that alternative. Any change must therefore be made by the Congress.

■ The trial court should now determine whether the arrests resulted from interceptions of oral or wire communications. If from wire communications, the warrantless interception should be suppressed as to those with standing to object. If not from wire communications, the critical question then becomes whether appellants had a reasonable expectation that the communications were not subject to interception. This too is an issue of fact to be determined by the trial court at the time of the motion to suppress. The district judge made a specific finding that Hall and Nichols knew they could be heard by other people and had no right of privacy. The record substantiates this finding and it is not clearly erroneous. United States v. Gunn, 428 F.2d 1057, 1060 (5th Cir. 1970); 3 C. Wright, Federal Practice and Procedure § 675, at 130 (1969). The judge stated he could not, from the evidence, make such a finding as to Dever.

Therefore, as to any conversations not involving a land-line telephone by Hall and Nichols, the interceptions were not "oral communications" as defined because they lacked the requisite expectation of privacy. Thus, no search warrant was required by the statute. As to Dever, the result may be different.

### III. The Fourth Amendment.

■ But interceptions not within the statutory definition of oral or wire communications still must meet the test of the Fourth Amendment. Electronic surveillance has come under close scrutiny by the courts and properly so. The ingenious mind of man can conjure up subtle methods of search through modern electronics as reprehensible as kicking down a door. While the Fourth Amendment offers protection from searches when unreasonable, it shuns absurd results. Every electronic surveillance is not constitutionally proscribed and whether the interception is to be suppressed must turn upon the facts of each case.

It would be absurd to hold that one is constitutionally protected from any untoward results when he makes statements at a time when he has reason to know some third party is, or probably is, listening. We have, therefore, held that "for suppression of overheard speech the speaker must have 'justifiably relied' on his privacy." United States v. Fisch, 474 F.2d 1071, 1076 (9th Cir. 1973) (footnote omitted); see Katz, supra, 389 U.S. at 351–353, 88 S.Ct. at 511–512. In interpreting the justifiable reliance language of Katz, we have leaned heavily on Mr. Justice Harlan's analysis:

> As the concurring opinion of Mr. Justice Harlan makes clear, the concept of justifiable reliance involves both subjective and objective aspects. There must, first of all, have been a reliance on, an actual and reasonable expectation of, privacy. But beyond the individual's expectations, the needs of society are involved. The individual's subjective, self-centered expectation of privacy is not enough. We live in an organized society and the individual's expectation of privacy must be justifiable, "one that society is prepared to recognize as 'reasonable.'"

Fisch, supra, 474 F.2d at 1076–1077 (footnote omitted).

■ Whether there was justifiable reliance is a factual question to be determined by the trial court. We discern no difference in substance between the test under the Fourth Amendment and that involved in the definition of oral communications under 18 U.S.C. § 2510(2). Thus, if a speaker has a justi-

fiable expectation that his conversation is subject to interception and therefore it is not an "oral communication," then the speaker has not justifiably relied on his privacy and the Fourth Amendment is no impediment to interception.

### IV. *Conclusion.*

■ The record is unclear as to whether the critical conversations were oral or wire communications. The case must be remanded for findings on this issue consistent with our opinion. Furthermore after the district court determines that question, if it finds that the communications were oral, then it must decide if the parties had a reasonable expectation of privacy. It has already determined that Hall and Nichols did not. Finally after these conclusions, the court must insure that the objecting party has standing to complain of the interception. *See* Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). If the intercepted communications were oral, and if either Hall or Nichols were parties, then they cannot complain because they did not expect privacy. In addition, a party may not protest if he was not a participant in a specific conversation.

Reversed and remanded.

FERGUSON, District Judge (dissenting in part):

I respectfully dissent from Part I of the court's decision. In my view, 47 U. S.C. § 605 requires a reversal of the convictions.

Section 605 provides in pertinent part:

"Except as authorized by chapter 119, Title 18, no person receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except . . . [in certain situations not here applicable]. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . . "

It is clear that prior to the 1968 amendment, the word "person" in § 605 encompassed law enforcement officials. Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968); Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937). In *Lee*, the Supreme Court squarely faced the issue:

"In [*Nardone*], the Court was first called upon to decide whether § 605 had indeed served to render evidence of intercepted communications inadmissible in a federal trial. In that case the Government urged that 'a construction be given the section which would exclude federal agents since it is improbable Congress intended to hamper and impede the activities of the government in the detection and punishment of crime.' 302 U.S., at 383 [58 S.Ct. at 277]. In reversing the judgment of conviction, the Court's answer to that argument was unequivocal:

'[T]he plain words of § 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that *"no person"* shall divulge or publish the message or its substance to *"any person."* To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments.

\* \* \* \* \* \*

'Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty. The same considerations may well have moved the Congress to adopt § 605 as evoked the guaranty against practices and proce-

dures violative of privacy, embodied in the Fourth and Fifth Amendments of the Constitution.' 302 U.S., at 382, 383 [58 S.Ct. at 276]." 392 U.S. at 382–383, 88 S.Ct. at 2099–2100.

Section 605 as amended in 1968 likewise provides that "no person" shall divulge any communication covered by the statute to "any person." The statutory language is clear and unambiguous. Nowhere in the statute is the word "person" restricted, limited, or modified. If the words of the statute are interpreted according to their plain meaning, § 605 clearly applies to law enforcement officers.

The majority fastens on two sentences in the Senate report to the Omnibus Crime Control and Safe Streets Act of 1968 to support its conclusion that § 605 as amended does not apply to law enforcement officials:

> " 'Person' does not include a law enforcement officer acting in the normal course of his duties. But see United States v. Sugden (226 F.2d 281 (9th Cir. 1955), *affirmed per curiam,* 76 S.Ct. 709, 351 U.S. 916 [100 L.Ed. 1449] (1956))." S.Rep.No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2197.

The reference to the *Sugden* case was clearly intended to emphasize the word "normal" in the preceding sentence. In *Sugden,* short wave radio transmissions on a private farm were monitored by a Federal Communications Commission employee and were then used to prosecute the broadcasters for immigration law violations. This court, by Judge Chambers, noted that the "theory of conduct" of the immigration officers "seems to have been, 'The Federal Communications Commission can legally listen. So we shall use their ears for what we, the Immigration Service, cannot do.' " 226 F.2d at 285. The court held that the intercepted conversations were inadmissible as long as the radio station was legally on the air and the operators were legally authorized to operate it.

The majority's conclusion in Part I that § 605 does not compel a reversal of the convictions in these cases turns on the statement in the Senate report that " 'Person' does not include a law enforcement officer acting in the normal course of his duties." I would hold that where, as here, the statutory language is clear and unambiguous, and where Congress could easily have incorporated any intended restriction or limitation on the meaning of any word in the statute itself, the words of the statute must be interpreted according to their plain meaning, and the statutory language must control.

It is a well-established principle of law that "there is no need to refer to the legislative history where the statutory language is clear." Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944–947, 93 L. Ed. 1207 (1949). In Easson v. Commissioner of Internal Revenue, 294 F.2d 653, 656 (9th Cir. 1961), this court held that "[w]hen a statute is unambiguous, the courts may not look elsewhere for the legislative intent." In United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), the Supreme Court stated, "Having concluded that the provisions of § 1 [of the statute in question] are clear and unequivocal on their face, we find no need to resort to the legislative history of the Act." (Footnote omitted.) This principle of statutory interpretation has been applied in many cases. *See* Ex parte Collett, *supra,* 337 U.S. at 58; 69 S.Ct. 944; Arkansas Valley Industries, Inc. v. Freeman, 415 F.2d 713, 717 (8th Cir. 1969); Sea-Land Service, Inc. v. Federal Maritime Commission, 404 F.2d 824, 828 (D.C. Cir. 1968); Department Employees' Local 1265 v. Brown, 284 F.2d 619, 627 (9th Cir.), cert. denied, 366 U. S. 934, 81 S.Ct. 1659, 6 L.Ed.2d 846 (1961).

The principle that clear and unambiguous statutory language must prevail over a conflicting statement in the legislative history holds true particularly where, as here, the same language was contained and authoritatively construed

in an earlier version of the statute. If Congress had intended to restrict or limit the meaning of the word "person" in the 1968 amendment, it could easily have done so in the statute itself. Indeed, Congress did explicitly distinguish between "person" and "law enforcement officer" in another section of the Omnibus Crime Control and Safe Streets Act. 18 U.S.C. § 2510, enacted (with 47 U.S.C. § 605) in Title III of the Act, contains separate definitions for "person" and for "Investigative and law enforcement officer." These definitions apply to the provisions of chapter 119 of Title 18, 18 U.S.C. §§ 2510–20. If Congress had intended law enforcement officers to be excluded from the word "person" in § 605, it manifestly would have done so through clear statutory language, as it did in 18 U.S.C. § 2510.

The majority also seeks support for its conclusion in Part I in the statement in the Senate report that the amended section "is not intended merely to be a reenactment of section 605. The new provision is intended as a substitute." 1968 U.S.Code Cong. & Admin.News, at p. 2196. In my view, this statement was intended to emphasize that the scope of coverage of § 605 was narrowed by the 1968 amendment, and that part of the area formerly regulated by § 605 was now to be regulated by chapter 119 of Title 18, 18 U.S.C. §§ 2510–20. Whereas formerly the provisions of § 605 applied to both wire and radio communications, the amendment restricted the scope of all provisions after the first sentence to radio communications. The amendment inserted the word "radio" before "communication" in the second and fourth sentences, deleted the phrase "wire or" preceding "radio" in the third sentence, and added the introductory clause "Except as authorized by chapter 119, Title 18," 47 U.S.C. § 605. In these respects, the amended section was a "substitute" for, and not merely a "reenactment of," § 605.

One court has held that § 605 as amended renders evidence of telephonic communications intercepted by police officers inadmissible. In People v. Trief, 65 Misc.2d 272, 317 N.Y.S.2d 525 (1970), aff'd mem., 37 A.D.2d 553, 323 N.Y.S.2d 659 (1971), the prosecution sought to introduce evidence obtained from telephone conversations intercepted by police officers. The prosecution conceded that prior to the 1968 amendment, the intercepted conversations would have been inadmissible, but contended that the amendment rendered them admissible. The court squarely rejected this view, holding that under § 605 as amended, the intercepted conversations must be suppressed.[1] *Cf.* Commonwealth v. Coviello, Mass., 291 N.E.2d 416 (1973).

The government concedes that the convictions of the defendants were possible only because of the intercepted communications. I would hold that the divulgence of those communications to the officers of the Arizona Department of Public Safety and their divulgence by the officers at trial violated 47 U.S.C. § 605, and I would reverse the convictions.[2]

---

1. While People v. Trief involved interceptions of wire rather than oral communications, its interpretation of § 605 to prohibit the divulgence of conversations intercepted by police officers does not depend upon the distinction between oral and wire communications. If § 605 applies to law enforcement officials, it covers interceptions of oral as well as wire communications.

2. It is clear that no expectation-of-privacy requirement is contained in § 605. United States v. Sugden, *supra*, 226 F.2d at 284–285; United States v. Laughlin, 226 F.Supp. 112 (D.D.C.1964); United States v. Fuller, 202 F.Supp. 356 (N.D.Cal.1962).