**WILLAMETTE SUBSCRIPTION TE-LEVISION, an Oregon limited partnership, Plaintiff,**

v.

**Roger E. CAWOOD, Thomas Craig, Gary E. Doyle, Patrick Eaton and Gwynn Y. Eaton, Kenneth Hall, Paul Carney and Jackie Meyer, Jane Doe Hanley, David L. Helzer, C.D. Hohmann, Donald Long and Gretchen Long, Terrence Leftridge, Vernon E. Walker, Frank Stark, James Stanek, Harlan Southward, Janet Shore, Bill Paeper, Charles R. Ortiz, Jack C. Odell, Clarence Mulkey, Edward L. Linkous, Robert C. Lamb, Theodore Rambeau, Clarence Satterlee, Jr., and Dale M. Jahn, Defendants.**

Civ. Nos. 83–1706PA, 83–1720PA, 83–1723PA, 83–1729PA, 83–1724PA, 83–1731PA, 83–1735PA to 83–1737PA, 83–1740PA, 83–1743PA, 83–1745PA, 83–1747PA to 83–1750PA, 83–1752PA, 83–1753PA, 83–1755PA, 83–1756PA, 83–1759PA, 83–1760PA and 83–1762PA to 83–1764PA.

United States District Court, D. Oregon.

Feb. 13, 1984.

Frank A. Vizzini, Bauer, Winfree, Anderson, Fountain & Schaub, P.C., Portland, Or., for plaintiff.

James Esterkin, Portland, Or., for defendants Patrick Eaton and Gwynn Y. Eaton.

Terrance C. Hunt, George O. Tamblyn, Tamblyn & Bush, Portland, Or., for all remaining defendants.

## OPINION AND ORDER

PANNER, District Judge.

The issue here is whether the federal wiretapping statute applies to unauthorized reception by individuals of the microwave broadcast of a privately-subscribed "pay T.V." service. Defendants are twenty-five of fifty residents of the Portland, Oregon, metropolitan area who have been sued by plaintiff Willamette Subscription Television (WST). WST contends defendants have received and viewed the television signals of Home Box Office, Inc. (HBO) without paying a monthly subscription fee to plaintiff, HBO's local distributor. WST brings federal claims for relief under section 605 of the Communications Act of 1934, 47 U.S.C. § 605, and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 18 U.S.C. §§ 2510–2520, and a pendent claim under Oregon law for unjust enrichment. Defendants move to dismiss plaintiff's second claim for relief. I conclude the wiretapping statute does not apply and GRANT their motions.

## BACKGROUND

I previously enjoined certain Portland-area defendants from manufacturing or selling antennas designed to receive the HBO signal. *Willamette Subscription Television v. J.R.'s Video Den, Inc.*, Civ. No. 83–1460PA (D.Or. Nov. 7, 1983) (Opinion and Order). The basic facts bear repeating:

> Plaintiff is an Oregon limited partnership engaged in the business of marketing and delivering commercial-free pay television to subscribers in the Portland metropolitan area. All of the programming which plaintiff delivers to its subscribers is provided by HBO. HBO granted an exclusive license to WST to market, sell, and deliver HBO programs to residences in the Portland area. WST in turn pays HBO a monthly fee for the license. WST's sole source of revenue is

**1166**

derived from monthly fees paid by its subscribers.

HBO's programming originates in New York and is sent via a series of microwave transmissions to a microwave receiver in Portland. The signal is then transmitted by wire to a microwave transmitter operated by Microband Corporation of America ("Microband"). Microband, a common carrier, is licensed by the FCC to operate a multipoint distribution service ("MDS") pursuant to the terms of a tariff it filed with the FCC. Microband is licensed for the express purpose of carrying for hire private communications. WST contracted with Microband to use Microband's MDS to distribute plaintiff's HBO service in the Portland metropolitan area. Plaintiff pays Microband a monthly fee for the use of its MDS.

Since tuners on standard television sets cannot receive MDS microwave transmissions, WST provides each of its subscribers with a special microwave antenna and a down converter. The down converter translates the MDS signal into a frequency that a standard television set can display. WST's subscribers pay an equipment installation fee and a monthly subscription fee. WST retains title to the antenna and down converter, and services this equipment as necessary.

*Id.*, slip op. at 2–3.

Plaintiff charged that J.R.'s Video Den and other defendants advertised and sold microwave antennae and down converters, along with instructions for using the equipment to intercept HBO programming without paying the subscription fees. In the present case, plaintiff charges individuals with using such equipment in their homes to intercept and privately view the HBO signal. There are no allegations defendants have videotaped and sold the broadcasts, invited others to view the broadcasts for a fee, or otherwise "profitted" from the interception.

For the purposes of the present motion, defendants concede that the facts as stated by plaintiff are true. Specifically, defendants concede that for part of its trip from New York studios to Portland homes, the HBO signal is carried via cable and telephone line.

## STANDARDS

■ The sufficiency of a complaint is tested by the rule of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." *Id. See also Harmsen v. Smith,* 542 F.2d 496, 502 (9th Cir.1976), *cert. denied,* — U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The factual allegations of the complaint are taken as true. *Kugler v. Helfant,* 421 U.S. 117, 125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975).

## DISCUSSION

Title 18 U.S.C. § 2511 provides in part:
(1) Except as otherwise specifically provided in this chapter any person who—
  (a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
  (b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication ...
  . . . .
  (d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2511.

Title 18 U.S.C. § 2510 defines the relevant terms:

(1) "wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation;

. . . .

(4) "intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

18 U.S.C. § 2510.

■ The first question is whether the HBO signal received by defendants is a "wire communication." Plaintiff contends that the plain wording of 18 U.S.C. § 2510(1) encompasses the HBO signal. It bases this argument on the defendants' concession that for part of its trip from New York to Portland, the signal travels by wire or cable. Plaintiff points out section 2510(1) comprehends "any communication made *in whole or in part* through the use of facilities for the transmission of communications *by the aid of wire,* cable, or other like connection *between the point of origin and the point of reception....*" *Id.* (emphasis added).

Plaintiff cites *United States v. Hall,* 488 F.2d 193 (9th Cir.1973). In that case, defendants were convicted of possession of marijuana with intent to distribute. Government agents, without a search warrant, eavesdropped on radio-telephone conversations. Defendants argued that evidence from the warrantless search should have been suppressed. The court noted that, while the record was not clear, it appeared that some conversations were between two radio telephones while others

were between a radio telephone and a regular land-line telephone. The court held that "when part of a communication is carried to or from a land-line telephone, the entire conversation is a wire communication and a search warrant is required." 488 F.2d at 197. The court remanded for additional findings.

The court reached its conclusion despite recognition that the decision "produces what appears to be an absurd result." *Id.*

These conversations were intercepted by an ordinary radio receiver and not by a phone tap. Logically they should be afforded no more protection than those occurring between two radio transceivers. They should be oral communications. However, Congress's definition of a wire communication necessitates this conclusion.

*Id.*

The court began by noting that the definition of wire communication is not free from ambiguity.

"[C]ommunication made in whole or in part ... through the use of facilities ... by the aid of wire ... between the point of origin and the point of reception...." could be interpreted in several ways. For example, it could be argued that if any wire is used to aid the communication, it must be deemed a wire communication. If this were followed to its conclusion, the use of a radio would be included in the definition because some wires are contained in the radio transmitter and receiver—thus the communication would be aided "in part" by the use of wire. However, such an interpretation would be inconsistent with the language of the immediately succeeding section which permits an agent of the FCC, in certain circumstances, "to intercept a wire communication, or oral communication transmitted by radio...." 18 U.S.C. § 2511(2)(b).

*Id.* at 196.

The court then stated:

Broadcasting communications into the air by radio waves is more analogous to

carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by a wire. As with any broadcast into the air, the invitation to listen is afforded to all those who can hear. In the instant case, the eavesdroppers merely tuned their radio receivers to the proper station. It is obvious that conversations initiated from a radio-telephone more logically fall within the category of "oral communication."

By reading the sections together, we can only conclude that the Congress did not mean that every conversation aided in any part by any wire would be a wire communication. *As a radio broadcast must be deemed an oral conversation,* we believe it would strain the legislative intent to hold that conversations emanating from a radio telephone would not be treated similarly.

*Id.* at 196–97 (emphasis added).

Nevertheless, the court drew a distinction between conversations between radiotelephones—which would be "within the definition of oral communications," *id.* at 197—and conversations involving a radiotelephone at one end and a land-line telephone at the other. Relying solely on the legislative history declaring that the coverage of section 2510(1) "is intended to be comprehensive," *id.,* quoting S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News 2178, the court held that government agents cannot eavesdrop on communications in the latter situation without a warrant.

*Hall* does not stand for the proposition advanced by plaintiff that any use of a wire or cable to carry a signal then transmitted by microwave makes that broadcast a "wire communication" under 18 U.S.C. § 2510(1). The *holding* is explained by the court's sensitivity to the rights of defendants subjected to warrantless searches. But when the court's *analysis* of the definition of a "wire communication" is applied to the facts in this case, the conclusion is clear that the HBO signal is not encompassed by section 2510(1).

First, "[a]s with any broadcast into the air," *id.* at 196, the HBO signal can be received by anyone with the proper equipment. Unlike a telephone conversation between private parties, there can be no expectation of privacy where the signal is readily received.

Second, while section 2510(1) uses the word "communication," the *Hall* court's concern was with protecting "conversations." The HBO signal involves no "conversations" between the originator and anyone who receives the signal. While section 2510(1) encompasses communications where only one party does the talking, there is no indication that Congress intended that the broad scope of the definition of "wire communication" would include purely commercial microwave broadcasts. Such broadcasts are covered by the wiretapping statute, if at all, only as "oral communications." *See id.* at 196–97.

Third, the interests of the parties to the conversations in *Hall* were from "the point of origin" to "the point of reception." Here, by contrast, WST's interest is in the microwave broadcast. Section 2510(1) would arguably cover the "tapping" of the HBO signal from a wire or cable. There is no allegation of any such tapping here.

I conclude that the HBO signal is not a "wire communication" as defined by 18 U.S.C. § 2510(1). *See United States v. Carroll,* 332 F.Supp. 1299, 1301 (D.D.C. 1971) (recording of one end of a telephone conversation without the actual interception of a communication passing through wires was not within definition of "wire communication").

■ The second question is whether the HBO signal broadcast in Portland is an "oral communication" as defined by 18 U.S.C. § 2510(2).

In the wiretapping statute, Congress presumed that citizens communicating by wire had an expectation of privacy. If a communication otherwise falls within the definition, section 2510(1) requires no separate showing that the communicators expected their conversation to remain private. Con-

gress made no such presumption concerning *oral* communications. Rather, section 2510(2) embraces only "oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation...." 18 U.S.C. § 2510(2). The communicators must *subjectively* believe their conversation would remain private, and such belief must be *objectively* reasonable. *See United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978); *United States v. Rose*, 669 F.2d 23, 25 (1st Cir.), *cert. denied*, — U.S. —, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

Plaintiff has not argued that it has a subjective belief that the HBO signal would remain "private." Indeed, plaintiff's language is telling:

> Certainly, the selling of a program ... for a fee based upon its expected audience, is strong evidence of an expectation that such communications will not be intercepted by unauthorized individuals, and certainly our copyright laws justify such an expectation.

Plaintiff's Memorandum in Opposition, pp. 3–4. Plaintiff "expects" to protect its *property* interests, but that is not the same as having an expectation of *privacy*.

In any event, if WST has a subjective expectation of privacy in the HBO signal, that expectation is not objectively reasonable. As previously stated, there can be no expectation of privacy where the signal is readily received, albeit with special equipment. *Supra*, p. 9. WST may have a "hope," but not an "expectation," of privacy. *See Rose*, 669 F.2d at 26.

In addition, section 2510(2) covers communication "uttered" by a person. Plaintiff argues that "[t]he oral communications involved are the spoken words of actors in the various modes of HBO programming." Plaintiff's Memorandum in Opposition, p. 3. However, *plaintiff* is not speaking or "uttering." It is simply a commercial entity which has purchased property rights to the words and acts of sports figures, actors and the like who themselves never had any expectation of privacy in their own utterances.

I conclude that the HBO signal is not an "oral communication" as defined by 18 U.S.C. § 2510(2).

My interpretation of the language of the statute is buttressed by the fact that the federal wiretapping statute is a *criminal* statute. While the statute provides civil remedies for individuals whose privacy rights have been invaded,[1] liability attaches only where defendants reasonably know that their conduct was criminal.

> Title III is foremost a criminal statute; although it does contain a provision creating a civil cause of action in favor of victims of unlawful electronic surveillance, that civil remedy is an inherent part of the criminal legislation. Indeed, no civil cause of action arises under Title III *unless* the criminal provisions of the same statute have been violated. 18 U.S.C. § 2520. Thus, individuals who have no fair warning that their conduct is violative of Title III should no more be subject to its civil penalties than to its criminal ones.

*Kratz v. Kratz*, 477 F.Supp. 463, 483 (E.D. Pa.1979) (emphasis in original).

No case holds that Title III applies to unauthorized reception of pay TV signals.[2]

---

**1.** Title 18 U.S.C. § 2520 provides:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation of $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

18 U.S.C. § 2520.

**2.** Not only is there an absence of case authority for plaintiff's position, but the "pay TV" industry has been attempting to get Congress to create the remedies which plaintiff argues Title III provides. *See* Unauthorized Reception of Subscription Television, 1981: Hearing on H.R.

The plain language of the statute does not cover such reception. The legislative history does not indicate that Congress intended the statute to apply to the situation here. Defendants have had no fair warning that their conduct violates the federal wiretapping statute. I hold it does not. I GRANT defendants' motions to dismiss the second claim for relief.

IT IS SO ORDERED.

4727 before the Subcommittee on Telecommunications, Consumer Protection, and Finance of the House Committee on Energy and Commerce, 97th Cong., 1st Sess. (1981). H.R. 4727, which did not pass the subcommittee, involved an attempt to amend 47 U.S.C. § 605 to include the type of civil penalties provided in 18 U.S.C. § 2520 for illegal wiretapping. The asserted need for the legislation is the unavailability of any meaningful civil remedy for "piracy."