Marion EDWARDS

v.

Stanford O. BARDWELL, Jr. and John Doe.

Civ. A. No. 85–865–A.

United States District Court, M.D. Louisiana.

April 10, 1986.

Lewis O. Unglesby, Unglesby & Brown, Baton Rouge, La., for plaintiff.

Edward J. Gonzales, Asst. U.S. Atty., R. Joseph Sher and Larry L. Gregg, Torts Branch, Civil Div., Dept. of Justice, Washington, D.C., for defendant Bardwell.

Jack M. Dampf, D'Amico, Curet & Dampf, Baton Rouge, La., for defendant Doe.

JOHN V. PARKER, Chief Judge.

Plaintiff initiated this action against Stanford O. Bardwell, Jr., the United States Attorney for this district, and a person identified only as John Doe, under the provisions of 18 U.S.C. § 2520 which authorize a civil action on behalf of any person whose wire or oral communication is intercepted, disclosed or used in violation of the Federal Wiretapping Act, 18 U.S.C. § 2510 *et seq.* The complaint alleges that Doe intercepted and tape recorded a portion of a conversation between Mr. Edwards and his attorney and then turned the tape over to the federal authorities and that Bardwell has made disclosure of the conversation to others.

The matter is before the court upon a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment" filed on behalf of Bardwell. That motion has been copiously briefed and orally argued and is now submitted to the court. Plaintiff has also moved to amend the complaint so as to add Assistant United States Attorney Ian F. Hipwell as a defendant. Although no written opposition to the motion

to amend has been filed, counsel for the United States Attorney opposed it at oral argument. Plaintiff also initiated an action against Doe and his insurer, State Farm Insurance Company in state court which, following an amendment to the petition specifically alleging that Doe's interception of the conversation was in violation of the Communications Act of 1934, 47 U.S.C. § 605, defendants have removed to this court, alleging federal question jurisdiction under 28 U.S.C. § 1331. That action was consolidated with the pending action by order of the court dated April 3, 1986, and plaintiff has now filed a motion to remand. Consequently, the issues in the removed action will not be considered at this time.

Bardwell's motion pleads the alleged immunity, absolute or alternatively qualified, of the United States Attorney and also argues that the undisputed facts establish that he is entitled to judgment in his favor. Doe, who has no immunity, absolute or qualified, has moved for summary judgment based upon his contention that the undisputed facts demonstrate no violation of 18 U.S.C. § 2511.

The undisputed facts establish that on an unspecified date in August, 1985, Mr. Edwards, who was then involved in a pending criminal case in the Eastern District of Louisiana, spoke with his attorney, John R. Martzell. Mr. Edwards spoke from his automobile over a radio telephone installed in the vehicle. Mr. Martzell spoke over the regular land-line telephone from his law office in New Orleans. Doe, who maintains a business office in Baton Rouge, was in that office and had in his possession a "Bearcat 350 Radio Receiver Scanner" of a type which is readily commercially available to the general public at numerous radio and electronics stores. The device has a scanning feature which monitors a prescribed number of radio frequencies or channels. Doe's device was scanning aircraft and other frequencies when the device picked up the conversation between Mr. Edwards and his attorney. After listening idly for a few minutes, Doe heard what he assumed could be a discussion of criminal activity and he then recorded the remainder of the conversation upon a small tape recorder. Doe subsequently mentioned to Assistant U.S. Attorney Hipwell that he had a tape recording of the conversation and Hipwell arranged for Doe to deliver it to the federal authorities. Bardwell has listened to the tape and has caused a written transcription of it to be prepared, both of which have been filed in this record under seal. Bardwell also contacted the United States Attorney for the Eastern District, where the trial was pending, and advised him of the existence of the tape recording for possible use in that criminal trial. The United States Attorney for the Eastern District declared that he had no interest in the tape recording and disclosed its existence to the court and to Martzell. This suit followed.

Any standard reference work or encyclopedia will disclose that a "radio telephone," which is fast becoming a popular fad, is simply a small radio set which converts sound waves into radio waves for broadcasting and converts radio waves into sound waves for receiving. When the person in the vehicle speaks over his radio telephone, his voice is broadcast upon a specific frequency to a transmitter/receiver maintained by the telephone company which then transmits the signal by telephone land-line to the person using the regular telephone. When the other person speaks the process is, of course, reversed. From a land-line terminal the voice is broadcast to the radio telephone. The voices of both persons are broadcast "in the clear," that is, no attempt is made to "scramble" or distort the signal. Thus, any person having a radio receiver within range of the broadcast can hear the conversation if his receiver is capable of receiving the frequency used. The frequencies or channels which a particular radio may receive are determined by the tuning device which it contains. A particular receiver may be constructed to receive a limited number of radio frequencies (i.e. only AM commercial radio stations, or both AM and FM radio stations or only commercial television stations) or to receive literally thou-

sands of frequencies upon which may be broadcast and received police, fire, railroad, ambulance, aircraft, marine, citizens band, and many other types of radio broadcasts, including mobile radio telephones. Radio transmission and receiving is, in short, a matter of physics. The radio telephone in plaintiff's car is in all respects a radio transmitter/receiver, no different from any other such transmitter/receiver insofar as its physics is concerned. The device changes ordinary sound waves into radio waves and uses certain frequencies to radiate those radio waves in all directions and it also changes radio waves back into sound waves for two-way communication. When he uses his radio telephone, Mr. Edwards is a mobile amateur or "ham" radio station in every respect. His station is simply limited in the number of frequencies upon which it can broadcast and receive and is limited in power.

The Congress, in an attempt to secure the privacy of certain communications between people, has enacted the Federal Wiretap Law, specifically 18 U.S.C. § 2511 which prohibits the willful interception or willful use of "wire" or "oral" communications. "Wire communication" is defined by § 2510(1) as:

> ... any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;
> ...

"Oral communication" is defined by § 2510(2) as: "... any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

Resolution of the question as to whether Doe's receipt or interception of and subsequent tape recording of the conversation between Mr. Edwards and Mr. Martzell

violated Section 2511 depends upon whether the conversation constitutes a "wire communication" or an "oral communication."

Section 2511(1) prohibits willful interception, willful disclosure, or willful use of the contents of any wire or oral communication. Because of the definitions in § 2510, that section prohibits interception of all wire communications but prohibits interception of only those oral communications made under circumstances which justify an expectation of privacy.

Although many cases have been cited by the parties, only three are enlightening. In *United States v. Hoffa*, 436 F.2d 1243 (7th Cir.1970) *cert. den.*, 400 U.S. 1000, 91 S.Ct. 455, 457, 27 L.Ed.2d 451 (1971), the court held that "there was no expectation of privacy in the ... calls ... which were exposed to everyone in that area who possessed an F.M. radio receiver or another automobile telephone tuned in to the same channel." (Id. at 1247). Thus, the Fourth Amendment did not require suppression of evidence of such communications. The report of the *Hoffa* case indicates that the calls in question were placed from "mobile telephone units located in automobiles" but does not indicate whether they were placed to other such mobile units or to land-line telephones, since in either event there was no reasonable expectation of privacy.

In *United States v. Clegg*, 509 F.2d 605 (5th Cir.1975), the defendant was convicted of wire fraud by rigging a device that allowed him to place long distance telephone calls in such a manner as to circumvent the company's toll call billing system. The defendant argued that evidence of his use of the device was obtained in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605, and further urged that his calls were radio communications because the route over which his illegal long distance calls traveled included microwave relays. The Fifth Circuit held that the calls were nevertheless wire communications under both 47 U.S.C. § 605 (which is not at issue here) and 18 U.S.C. § 2511.

Reasonably elementary physics teaches that microwaves are super high frequency radio waves. Unlike radio broadcasting waves, microwaves do not follow the curve of the earth. They travel in relatively straight paths and may be concentrated in a narrow beam similar to that of a search light. The telephone company focuses microwaves from one relay station to another, each station being equipped to transmit and receive microwaves and each being located relatively near to the next.[1]

In *United States v. Hall*, 488 F.2d 193 (9th Cir.1973), the defendants were convicted of drug offenses. They had utilized radio telephones installed in two vehicles. Their communications were initially overheard by a housewife, who, as described by the court:

> ... while doing housework, intercepted the appellants' conversations on her eight-band, 150–170 megacycle radio. The radio is not unique. The public may purchase similar sets on the open market and can listen to police and fire broadcasts, calls placed over the telephone companies' mobile telephone network, etc..... (Id. at 195.)

The housewife reported her information to the police who began their own warrantless electronic surveilance. Defendants sought to suppress the evidence of their radio telephone communications as alleged violations of 18 U.S.C. § 2511. The court concluded that all such communications from one radio telephone to another radio telephone were "oral communications" with no reasonable expectation of privacy but that calls from a radio telephone to a regular land-line telephone were "wire communications" noting:

> We realize that our classification of a conversation between a mobile and a land-line telephone as a wire communication produces what appears to be an absurd result. These conversations were intercepted by an ordinary radio receiver and not by a phone tap. Logically they

should be afforded no more protection than those occurring between two radio transceivers. They should be oral communications. However, Congress's definition of a wire communication necessitates this conclusion. (Id. at 197)

In *Hall* the defendants relied, as does plaintiff here, upon the language of § 2510(1) defining wire communication as one "made in whole or *in part* ... through the use of ... wire...." The court insightfully commented that the language could be interpreted in several ways pointing out that:

> For example, it could be argued that if any wire is used to aid the communication, it must be deemed a wire communication. If this were followed to its conclusion, the use of radio would be included in the definition because some wires are contained in the radio transmitter and receiver—thus the communication would be aided "in part" by the use of wire. However, such an interpretation would be inconsistent with the language of the immediately succeeding section which permits an agent of the FCC, in certain circumstances, "to intercept a wire communication, or oral communication transmitted by radio...." (Id. at 196)

■ This court certainly concurs that the Congress did not intend to convert a radio transmission from an oral communication to a wire communication because of the wires contained within the radio device itself.

Thus, from the jurisprudence we have one case holding that there is no reasonable expectation of privacy in any call originating over a mobile radio telephone, one case holding that the use of microwave relay stations does not convert a regular land-line long distance telephone call into a radio or "oral" communication, and one case holding that calls between radio telephones are "oral" communications but that calls between radio telephones and land-line

---

1. For purposes of this opinion, exploration of the physics of radio communication by satellite is unnecessary.

telephones are "wire communications" under § 2511.

While it is certainly correct that any person equipped with a device built to receive microwaves who positions himself in the path of the microwave "beams" can receive telephone company transmissions of long distance telephone calls from relay station to relay station, this is an entirely different matter from hearing a radio telephone broadcast over a commercially available device which also may receive thousands of other frequencies of radio waves. There is no evidence in this record that devices for receiving microwaves are available generally to the public on the open market or, indeed, that such devices are in common use by the general public, as are "bearcat" scanners. A person receiving a radio telephone broadcast over such a receiver has no way of knowing whether both parties to the conversation are talking over radio telephones or whether one of them may be talking from a regular land-line telephone. Since the device will receive only radio waves, it will not receive or intercept calls that are transmitted by electricity over telephone lines.

Under the view adopted by the Ninth Circuit, the housewife who listened to the radio while she was doing her housework committed a federal crime when she listened to a radio broadcast between a radio telephone and a regular land-line telephone but she committed no violation when she listened to calls from radio telephone to radio telephone. Since her receiver can pick up only radio transmissions, the housewife cannot tell when her conduct is criminal and when it is innocent. Surely the Congress did not intend such an absurd result. If it had so intended, it would have prohibited commercial sale of radio receivers built to receive the frequencies reserved for radio telephone communication or it would have adopted other legislation evidencing that intent.

▮▮▮ With all deference to the Ninth Circuit, this court considers that when either end of a communication originates over a radio telephone, that conversation is an "oral" communication and the fact that the communication travels in part on a line to a land-line telephone and back to a radio transmitter does not convert it to a "wire" communication. There is no reasonable expectation of privacy in a communication which is broadcast by radio in all directions to be overheard by countless people who have purchased and daily use receiving devices such as a "bearcat" scanner or who happen to have another mobile radio telephone tuned to the same frequency. Hence, Doe did not violate § 2511 when he listened to the radio telephone conversation between Mr. Edwards and Mr. Martzell.

Since Doe's "interception" of the communication did not violate § 2511, neither did his tape recording or his divulging of it to the United States Attorney. By the same token, any disclosure made by the United States Attorney is also no violation of the statute.

The uncontested facts in this case establish that Doe and the United States Attorney are entitled to judgment as a matter of law because the undisputed facts show that there was no violation of § 2511. Since this is the conclusion of the court, it is unnecessary to consider the other defenses, such as prosecutorial immunity and no willful interception, which have been raised by the defendants.

The motion for summary judgment on behalf of each of the defendants is hereby GRANTED and this action will be dismissed. Since it is obvious that plaintiff cannot make out a case against Assistant United States Attorney Hipwell, the plaintiff's motion to amend the complaint is hereby DENIED.

Plaintiff claims that the conversation between him and his attorney is subject to the attorney-client privilege. It may or may not so qualify because of the method used to broadcast it, but no one is attempting to offer the contents of that conversation in evidence. Nevertheless, because it is a matter that should be maintained as confidential, the court ORDERS that the tape recording of the conversation, as well as the transcription of the tape which has

been filed in the record, be maintained under seal. It should also be noted that there is nothing in the conversation between Mr. Edwards and his attorney which even suggests criminal conduct of any sort. The parties have voluntarily taken steps to prohibit the public identification of John Doe and, to that end, it is ORDERED that his deposition which has been filed in the record of this case be maintained under seal. All other documents which have been filed in this case, if they are sealed, are hereby ORDERED to be unsealed. Counsel for plaintiff has requested that all "memorandums" (sic) which have been filed in these proceedings be accepted as a part of the record. That is a reasonable request and it is so ORDERED.