STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Prettic SMITH, Defendant-Appellant.

Supreme Court

*No. 87–0209–CR. Argued October 5, 1988.—Decided April 25, 1989.*

(Also reported in 438 N.W.2d 571.)

For the plaintiff-respondent-petitioner the cause was argued by *William Ganser,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Michael Yovovich,* assistant state public defender.

HEFFERNAN, CHIEF JUSTICE.  The state has petitioned for the review of a decision of the court of appeals[1] which reversed the judgment of conviction by the LaCrosse county circuit court of Prettic Smith for possession of marijuana with intent to sell contrary to sec. 161.41(1m), Stats. The court of appeals did so, because it concluded that the warrantless interception of Smith's cordless telephone conversation, which led the police to search Smith's house, was a protected "wire communication" under the Wisconsin Electronic Surveillance Control Law, secs. 968.27 to 968.33, Stats. It therefore, in effect, concluded that the evidence obtained in the search was the "fruit of the poisonous tree" and its admission should have been suppressed by Judge Michael J. Mulroy.[2] It reversed the conviction and remanded for further proceedings.

---

[1] *State v. Smith,* 142 Wis. 2d 562, 419 N.W.2d 259 (Ct. App. 1987).

[2] Sec. 968.30(9)(a), Stats., specifically provides for suppression of "the contents of any intercepted ... communication, or evidence

Because we conclude that the court of appeals erroneously construed the statute to give protection from warrantless interception to the broadcast portion of a cordless telephone conversation, we reverse the court of appeals, thus leaving intact the judgment of conviction entered by the circuit court for LaCrosse county.

The facts in this case may be briefly stated. A neighbor of Prettic Smith, without any prompting by the police, while using his radio scanner came upon Smith's cordless telephone conversation with another person. The neighbor recognized Smith's voice and the name by which he was addressed and concluded from what he heard that Smith might be engaged in drug selling. He notified the police, who came to the informant's house and there taped subsequent conversations of Smith with a third person or persons who were interested in buying marijuana from Smith.

The taped conversations were presented to a magistrate, who found probable cause for the issuance of a search warrant. The subsequent search revealed a small quantity of marijuana, and it also revealed other apparatus that supported the conclusion Smith was a seller of marijuana. Smith was arrested at his home and taken to the stationhouse. After listening to the tape recording, he stated, "Well, I guess you got me, there's no sense in lying about anything." He then gave a taped statement that the marijuana was his and that, while seasonally unemployed, he had been dealing in marijuana to make a living.

Nevertheless, Smith moved to suppress the marijuana evidence. Smith claimed, and this claim is not

derived therefrom, on the grounds that the communication was unlawfully intercepted."

refuted, that he believed that conversations on the cordless telephone were assured privacy. Smith acknowledged that he had never read the manual that accompanied the cordless telephone when it was purchased. The owner's manual indicated that reception could be attained over distances up to 700 feet if the antennas on the handset and base unit were fully extended. At the suppression hearing, a sales supervisor of a company which sold telephones stated the general principles upon which the cordless telephone operated—that FM radio signals were transmitted from the handset to the base unit and from the base unit to the handset. He stated that another person could pick up what was said on a cordless telephone if within a short distance and listening on the same frequency. He stated that, if customers heard other conversations on their telephones, the telephones would be replaced with one modified to operate on a different radio frequency. He acknowledged that a radio scanner would be able to overhear a cordless telephone conversation if it were tuned to the same frequency as that being used by the cordless telephone.

After taking testimony at the suppression hearing, the court stated "that though it is called a telephone and though it is referred to as a telephone, a cordless telephone, that it, in fact, is a radio."

The court stated that, while Smith said he expected privacy, Smith had not read the manual. Judge Mulroy reasoned that a reading of the manual would have led a reasonable person to conclude there was no assurance of privacy while using a radio broadcast transmitter such as a cordless telephone.

Although the trial court found that Smith believed his telephone conversation would be private, the court concluded the conversation was not protected by the

fourth amendment or the electronic surveillance statute as an "oral communication," because it was unreasonable for Smith to so believe. The suppression court did not address the question of whether the conversation was protected as a "wire communication." Suppression was denied. Smith then pleaded guilty. Appeal then followed.[3]

On appeal to the court of appeals, that court decided the question on a basis that was not argued or mentioned by either party in its brief. The court of appeals held that the radio portion of cordless telephone conversation was protected, because of a unique provision of the Wisconsin statute that the court believed evinced a legislative intent to protect a radio conversation as a "wire communication."

Before proceeding further with the discussion of the rationale of the court of appeals and of the rationale on which we decide this case to the contrary, it is necessary to state the basic provisions of the Wisconsin Electronic Surveillance Control Law.

That statute prohibits the interception of any "wire" or "oral" communication, as defined, without prior judicial approval. The contents of any communication obtained in violation of the strictures of secs. 968.27–968.33, Stats., cannot be received in evidence in a Wisconsin court. Sec. 968.30(8) and (9). In fact, to intercept such a communication may be punishable by criminal sanctions. Sec. 968.31.

---

[3]Section 971.31(10), Stats., provides:

(10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty.

The terms "wire communication" and "oral communication" are statutorily defined:

**968.27 Definitions.** As used in ss. 968.28 to 968.33:

(1) 'Wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, microwave or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a public utility in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications.

(2) 'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

Thus, if a telephone conversation which the police intercepted without a warrant is either a "wire communication" or an "oral communication," its use in court proceedings is prohibited. Where there is a "wire communication," *e.g.,* ordinary communication by landline telephone, there is a statutory presumption of confidentiality. Even were a person to know that the conversation was in fact being intercepted by police authorities, there could be complete confidence, as a matter of law, that, in the absence of prior judicial approval, the contents of the conversation or evidence derived therefrom could not be used in court proceedings. The expectation of privacy, whether reasonable or unreasonable, is irrelevant, because the privacy of a "wire communication" is protected as a matter of law.

Where, however, there is an "oral communication," there must be not only a subjective belief that the

communication is private, but that belief in privacy must be one that a reasonable person would have in the circumstances.

The trial judge did not address whether Smith's cordless telephone conversation was a "wire communication." Indeed, counsel did not pose that question at the suppression hearing. The evidence at the hearing was concerned with whether Prettic Smith believed that his conversation was private and whether his belief was a reasonable one. Did he have the subjective belief that his conversation would be private? The trial judge found that this belief was not a reasonable one, for the evidence demonstrated that a cordless telephone was a short range radio broadcasting device, a broadcasting device that was subject to ready interception by standard radio scanners, radio receivers, or other cordless telephones. Thus, the trial judge concluded that Smith's conversation was not one in which there could be an objective conclusion that there was a reasonable expectation of privacy. The warrantless interception could—and in this case did—furnish the basis for the search. The marijuana and paraphernalia seized at Smith's home were held not to be "fruit of the poisonous tree," suppressible under sec. 968.30(9)(a), Stats., *supra,* but the fruit of an interception of a conversation which was not protected by the statute or the fourth amendment.[4]

The court of appeals did not address the circuit court's rationale that Smith's conversation was not an "oral communication." Nor need it have done so in light of its conclusion that Smith's conversation was a protected "wire communication." Because we disagree

[4]Section 968.27(12), Stats., is a particularized statutory codification of the fourth amendment right. *See Katz v. United States,* 389 U.S. 347 (1967).

with the court of appeals reasoning and conclusion in that respect, we are obliged to address the question of whether Smith's conversation was an "oral communication." We do so and conclude it was not. We do so on the basis of the correct analysis and the reasoning of the trial judge summarized above, which we adopt.

The court of appeals, *sua sponte,* as it could when interpreting a statute, concluded that a cordless telephone conversation was protected as a "wire communication" under the rationale of *ejusdem generis.* The court of appeals, in effect, turned the reasoning of the trial court against itself by first agreeing with the trial court that the conversation was a radio broadcast and then, by an interpretation of the statute, reaching the conclusion that a radio conversation or transmission of a conversation by radio was a "like connection" under sec. 968.27(1), Stats. The court of appeals stated:

> Wisconsin's statute not only protects communications broadcast from a transmitter to a receiver by means of microwave, but adds 'other like connection' to the protected method of audio transmission. Microwaves are 'super high frequency radio waves.' *Edwards v. Bardwell,* 632 F. Supp. 584, 588 (M.D. La.), *aff'd,* 808 F.2d 54 (5th Cir. 1986). A cordless telephone also uses radio waves. A microwave transmitter and a cordless telephone both use the air to transmit voice communications which are susceptible to interception by persons wishing to eavesdrop on telephone conversations. Microwaves and radiowaves are 'like connections.' 142 Wis. 2d at 568.

We find this rationale unpersuasive. Stating the syllogism employed by the court of appeals reveals that it is basically flawed. The court of appeals asserts that, because a protected connecting link in a wire or cable

transmission may be a microwave transmission, and microwaves are but a portion of the spectrum of radio waves, all radio wave transmissions are therefore protected. We think this overlooks the specialized nature of microwave relays as used in telephonic communication networks and fails to contrast, or to compare them with, other types of radio broadcasts.

A microwave link in telephone communication is a focused or targeted radio beam, operating on a line-of-sight basis from one relay position to the next. A microwave is a very special type of radio wave. Its extreme high frequency allows it to be efficiently directionally transmitted. 16 Macropedia, "Telecommunications Systems," Encyclopedia Brittanica, Inc., pp. 504–12 (Chicago 1986). Microwave transmissions are focused beams comparable to a stone aimed at a specific target, which will not deviate from its course. A radio telephone broadcast, on the other hand, is of much lower frequency and is thus not capable of being transmitted in a particular direction. It is, by definition, "broadcast." It is not a stone hurled at a target, but is rather analogous to a stone dropped into a pool of water, which results in the transmission of equal waves of energy in all directions, which will lap against any obstacle in the path of the emanating and ever enlarging concentric circles until the wave energy transmitted is totally diminished. An analogous phenomenon occurs when a cordless telephone transmitter is used. Weak signals are transmitted from the base unit and handset in all directions and may be intercepted within about one thousand feet by anyone who is listening with a scanner, compatible cordless telephone, or other radio receiver. To intercept a microwave transmission, however, the interceptor must be "in the direct line of fire" and must be using sophisticated listening equip-

ment, *e.g.,* single side band receiver. Microwave is, to use the words of the statute, a "like connection [like a wire or cable] between the point of origin and the point of reception." The analogy to a general broadcast radio or a cordless telephone is so imperfect as to be totally unpersuasive. The operative words of the statute are those that, in effect, refer to a linear connection analogous to a wire, a cable, and microwave as a line-of-sight transmission device. The words posit no analogy to the type of radio technology utilized by the defendant in this case.

The term "microwave" has a particularized meaning in terms of broadcast technology and surveillance and communication regulations:

> Microwave consists of extremely high frequency radio waves transmitted point-to-point on line-of-sight paths between antennas located on towers or building tops (in terrestrial microwave systems) and between satellites and earth station 'dish' antennas (in satellite-based systems.) S. Rep. No. 99–541, 99th Cong., 2d Sess., reprinted in 1986 U.S. Code Cong. and Admin. News 3555, 3563.

This is a narrow and specific use of the term.

There is no evidence to support the court of appeals contention that anything more was meant. There is no express or intimated legislative intention that microwave transmissions were to be equated with broadcast radio transmissions generally.

A more difficult question was not addressed by the circuit court or the court of appeals: Whether, conceding that the portion of the conversation transmitted by the handset or the base unit is by radio waves subject to easy or casual interception, the communication is nevertheless a "wire communication" because it was

"made ... in part through the use of facilities ... furnished or operated by any person engaged as a public utility ...." Sec. 968.27(1), Stats. It is apparent that in this case a portion of the conversation that was overheard was transmitted by facilities owned by a public utility. The defendant's words were transmitted by the base unit to the handset and from the handset to the base unit and, hence, by public utility lines to the person who was talking to Prettic Smith.

The question, then, is whether, if the conversation or communication, "in part," is transmitted by land wire lines of a public utility, the entire conversation is protected. *United States v. Hall*, 488 F.2d 193 (9th Cir. 1973), took the affirmative position on that question—that the whole communication therefore was protected as a "wire communication." This decision has been roundly criticized as absurd. It is absurd, however, only if it is absurd to take legislative language literally, as indeed *Hall* did. One criticism of *Hall* was that the interpretation given in that case would make a criminal of every citizen who innocently picks up a cordless telephone conversation. This is an argument that is absurd (it is reiterated in the briefs in this case without approval or disapproval by the attorney general), for under Wisconsin law it is not the mere fact of interception that is criminalized, but the *intentional* interception of any conversation. Sec. 968.31(1)(a), Stats. Under the facts of this case, the initial interception of Prettic Smith's conversation apparently was inadvertent, not intentional.

The question is not free from difficulty, and we have not been helped by any court of appeals or trial court analysis of the problem. We are, however, helped by the fact that *Hall* has not been followed by any other court and by the acknowledgment in *Hall* itself that its

conclusion was illogical in view of the fact that a communication between two mobile radio telephones was an unprotected conversation. The court in *Hall*, however, chose to take the legislative language literally. Other courts in similar cases have concluded that *Hall* was incorrect in that the congressional act or state statutes patterned after the congressional act could not have intended to protect as a "wire communication" the radio transmitted portion of a telephone conversation. Uniformly, the *Hall* literal approach has been brushed aside as being unreasonable. *See Dorsey v. State,* 402 So. 2d 1178 (Fla. 1981); *Edwards v. Bardwell,* 632 F. Supp. 584 (M.D. La. 1986), *aff'd* 808 F.2d 54 (5th Cir. 1986); *State v. DeLaurier,* 488 A.2d 688 (R.I. 1985); and in the most recent case brought to our attention, *People of the State of New York v. Fata,* 529 N.Y.S.2d 683 (Co. Ct. 1988).[5]

While we find none of these decisions overwhelmingly persuasive, they do demonstrate that the difficult question addressed in *Hall*—the question of whether a radio communication that in part is transmitted by public utility wire or cable is wholly protected as a "wire communication"—has uniformly been decided against the *Hall* subservience to the literal application of the surveillance statute. The most recent case, *People of the State of New York v. Fata,* 529 N.Y.S.2d 683 (Co. Ct. 1988), relies in part upon the recently revised (1986) federal statute, 18 U.S.C., sec. 2510, which provided that "such term [wire communication] does not include the radio portion of a cordless telephone communica-

---

[5]These cases critical of *Hall* have received equal criticism by scholars and commentators. *See* Note, 86 Colum. Law Rev. 323 (1986); Note, 19 The John Marshall Law Rev. 1087; Note, U. of Ill. Law Rev. 143 (1985).

tion that is transmitted between the cordless telephone handset and the base unit ...."

The reference in *People v. Fata* is to the federal wiretap law. But an identical amendment was adopted in Wisconsin in 1988, 87 Wis. Act. 399. It provides that "'wire communication' ... does not include the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit." Sec. 968.27(17), Stats. 1987–88.

It is therefore clear that, since May 17, 1988, the effective date of this amendment, a conversation of the type intercepted in this case is not entitled to protection as a "wire communication." Accordingly, whatever this opinion might hold, it is not precedential on the question of whether a cordless telephone communication is protected as a "wire communication." It is not, for we decide this case on the language of the superseded pre–1988 statute that did not specifically exclude cordless telephone communications from protection. In the future, subsequent to the 1988 amendment, the Prettic Smith type conversation will not be afforded protection. It is not the new statute we are construing but the original one. The decision in this case is therefore applicable to this case only and not to cases that may arise in the future. Our decision in this case is "good for this day and train only." *Smith v. Allwright,* 321 U.S. 649, 669 (1944) (dissent of Roberts, J.). Nevertheless, the new statute may be helpful in respect to how we should construe the earlier one.

It would appear that the 1988 revised statute reflects the rationale of the cases we have referred to above that concluded that cordless telephone conversations—radio communications—should not be accorded the presumption of privacy that is afforded to landline "wire communications." Thus, it is reasonable to

101

conclude that the congress and the Wisconsin legislature, having examined the cases that held that a cordless conversation was not a "wire communication," acquiesced in their interpretations of the surveillance law and made explicit in the statutes what had theretofore been only implicit as the result of judicial interpretation. Accordingly, when we examine the legislative resolution of the question, we can reasonably conclude that the legislature interpreted its prior statute to mean that a cordless telephone communication was different in a substantial manner from conversations conducted "by the aid of wire, cable, microwave or other like connection." Sec. 968.27(17), Stats. We can then look at the new statute as a legislative explication of the meaning of the prior statute viewed against the backdrop of the prevailing cases and the understanding of current cordless telephone technology.[6] We therefore conclude that a proper interpretation in light of intervening case law and subsequent amendments is that it is reasonable to look upon the "wire communication" technologies specified in the statute as a list of enumerated protected technologies that should be narrowly construed. Although we construe the statute as it existed prior to the time that cordless telephone conversations were specifically denied protection, it is appropriate to hold that it was not ever the intent of the legislature to protect conversations that did not follow a wire, a cable, a line-of-sight microwave, or a like connection. For example, while we might in a proper

___

[6]We recognize, however, that it would not be wholly unreasonable to conclude that no amendment would have been necessary unless the legislature meant to change the meaning of the original statute, *i.e.*, that cordless telephone conversations were protected under the earlier statute, but the amendment signalled a changed legislative intent.

case conclude that a communication technology like fiber optics, not referred to in the statute, is sufficiently similar to wire, cable, or focused-line-of-sight microwave connections to be included in the classification of "wire communications," radio broadcasting by a cordless telephone is a very different type of technology.

The primary difference between cordless telephone transmission and the list of technologies protected by the statute is the ease with which cordless telephone conversations may be intercepted. To expand the presumption of the statute to such a commonly, and innocently, overheard technology as broadcast radio would be to greatly expand the reach of the statute.

Contrast should be noted in the two categories of protection provided by the legislature by the Wisconsin Electronic Surveillance Control Act. While the "oral communication" portion of the statute depends upon shifting social expectations of privacy, the "wire communication" portion carves out a specific legislative protection for certain common carrier communications, without other reference to reasonableness. There is no discernible legislative justification to extend the legislative presumption of a reasonable expectation of privacy under the wire portion of the statute to conversations on cordless telephones.

While, as we have demonstrated earlier in this opinion, the "microwave" provision does not reasonably lead to the conclusion that all radio transmissions are protected "wire communications," it is also apparent that the cordless telephone technology does not fit comfortably with the types of communication that reasonably should be afforded the presumption of privacy given by law in respect to "wire communications." We conclude, therefore, that, under the law as it existed prior to 1988, the radio portion of a cordless

telephone conversation is not a protected "wire communication."

If a cordless telephone conversation is to be protected at all from interception, it must be under the fourth amendment standards of *Katz v. United States,* 389 U.S. 347 (1967), and as now codified in sec. 968.27(12), Stats., as an "oral communication." It would appear that for the future there can be no protection of a cordless telephone conversation as an "oral communication," whatever the subjective belief of the user, because the Federal Communications Commission has ordered that a cordless telephone base unit must bear the legend, *"Privacy of communications may not be ensured while using this phone."* 47 C.F.R., sec. 15.236 (1987). In light of this notification, the expectation of privacy cannot be a reasonable one.

Thus, it would appear that this court can formulate no precedent for the future in respect to "oral communication" protection in respect to the use of a cordless telephone. By the F.C.C. legend required to be placed on a cordless telephone, society has announced the policy that an objective expectation of privacy is not reasonable. Hence, any subjective expectation is irrelevant.

It may also be postulated that the expectation of privacy in respect to cordless telephone communications has been terminated as a matter of law as the result of the amended statute, sec. 968.27(17), that specifically excluded a cordless telephone as a "wire communication." This was in a sense a legislative declaration that there could be no reasonable expectation of privacy. Hence, there could be no protected conversation as either an "oral" or a "wire communication." It would appear most unlikely under the present

state of the law—statutory or by F.C.C. rule—that there can be any assertion that a cordless telephone conversation cannot be intercepted without a warrant and the contents thereof be admitted into evidence.

This is not a development that need be applauded, but it reflects the realities of modern communication and the ease with which interception can be accomplished without even a purpose to do so. The convenience to the user of a cordless telephone is matched by the ease of the interception of its conversation by others.[7]

In the instant case, in light of the nature of the technology used, broadcast radio communication, objectively there could be no reasonable expectation of privacy.[8] The cordless telephone is not accorded protection as a device for "wire communication." The court of appeals was incorrect in the statutory interpretation that led it to that conclusion. The clear trend of decisional law has been that a cordless telephone conversation is not to be deemed either a protected "wire communication" or an "oral communication." Recent statutory changes have validated those decisions.

We accordingly conclude that no statutory or fourth amendment rights were violated by the warrant-

---

[7] A commonly used shortwave listener's handbook states, "Cordless telephones are found from ... to ... kHz, and these can provide hours of *fascinating* listening." H. Helms, *Shortwave Listening Handbook,* p. 29, (Prentice-Hall, Inc. Englewood Cliffs, New Jersey (1987) (emphasis in original).

[8] We note that the privacy expectations of a party using a normal landline phone may well be a protected "oral communication" even if that party is unknowingly conversing with another who is using a cordless telephone. *See State ex rel. Arnold v. County Court of Rock Co.,* 51 Wis. 2d at 434 (1971).

less interception of Smith's conversation on his cordless telephone. The evidence obtained by the search premised on the intercepted cordless telephone conversation was admissible into evidence. The court of appeals decision to the contrary is reversed, and the conviction may be allowed to stand.

*By the Court.*—Decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The majority concludes that the conversation transmitted over the cordless telephone in this case is neither a "wire" nor an "oral" communication protected under the Wisconsin Electronic Surveillance Control statute, sec. 968.27, Stats. 1985–86, and that therefore no search warrant was needed.

I recognize that this case is of limited significance because the Wisconsin statute has been amended and the FCC has adopted new rules regarding cordless phones. Nonetheless I write to state my disagreement with the majority's interpretation of the statute. The statute has been amended to exclude the radio portion of a cordless telephone communication from the statutory definition of wire communication. The FCC now requires cordless telephones to bear the legend: "Privacy of communications may not be ensured when using this phone." Thus it seems unlikely that a person using a cordless telephone can claim that the communication is an oral communication; it would be difficult to show that an expectation of privacy is justified. These developments do not, however, affect this case.

I conclude that the majority's definitions of "wire communication" and "oral communication" are at odds with the words of the statute and the legislative intent. Therefore, I dissent.

The majority opinion's interpretation of the definition of "wire communication" is not, I conclude, consistent with the words of the statute. Because the phone communications intercepted in this case were "made ... in part through the use of facilities ... furnished or operated by any person engaged as a public utility ...," majority opinion at pages 98–99, they clearly fall within the statutory definition of "wire communication." See Note, *State v. DeLaurier: Privacy Rights and Cordless Telephones—The Fourth Amendment is Put on Hold,* 19 J. Marshall L. Rev. 1087, 1093–94 (1986); Note, *The Admissibility of Evidence Obtained by Eavesdropping on Cordless Telephones,* 86 Colum. L. Rev. 323, 338–339 (1986); Note, *Title III Protection for Wireless Telephones,* 1985 U. Ill. L. Rev. 143, 154.

The majority opinion's definition of "wire communication" is also contrary to legislative intent. The opinion of the court of appeals correctly observes that, in drafting the statute, the legislature focused on the twin purposes of protecting the citizens' need for effective law enforcement and the citizens' need for privacy of written and oral communication. 142 Wis. 2d 562, 568, 419 N.W.2d 259 (Ct. App. 1987). The legislature accomplished these dual purposes by adopting a broad definition of wire communication and by requiring prior court authorization. See analysis by the Legislative Reference Bureau, 1969 Assembly Bill 860 and Attorney General Robert Warren's analysis of Assembly Bill 860 (1969). The majority's interpretation does not give effect to the legislature's dual purposes and thwarts the legislative means designed to accomplish these purposes.

The majority opinion concludes that the defendant's communications were not "oral communications" under the statute because "objectively there

could be no reasonable expectation of privacy," majority opinion at page 105. I find this conclusion unpersuasive and unsubstantiated. This record supports the conclusion that the defendant's expectation that the communication was not subject to interception was justified. The FCC concluded that "[a]pparently, most customers who use [cordless] phones are unaware that ... a signal transmitted through space can be received by an unintended listener. A number of consumers are surprised and concerned about this feature of cordless phones." 48 Fed. Reg. 4788, 4791 (1983). Furthermore, the owner's manual in this case did not expressly inform the reader that the telephone was a radio communication or that the conversation could be monitored by other persons. The manual is at defendant's brief, appendix, pp. 102–108. Indeed I believe that the more reasonable inference to be drawn from the manual is that the privacy of a phone conversation could be maintained.

For the reasons set forth, I dissent.

WILLIAM A. BABLITCH, J. (dissenting). The issue is whether the police may deliberately, without a warrant, eavesdrop on a private wireless telephone conversation carried out in one's home. The majority says "yes." I disagree.

I conclude that the deliberate interception by the police of a telephone conversation in one's home is subject to the fourth amendment of the United States Constitution.

The majority concludes that any expectation of privacy in a cordless telephone communication cannot be a reasonable one, because the F.C.C. has ordered that a cordless telephone base unit must bear the legend, *"Privacy of communications may not be ensured*

*while using this phone.*" 47 C.F.R., sec. 15.236 (1987). Majority opinion at page 104.

The F.C.C. "warning" merely states the obvious. Modern technology is quickly rendering the concept of privacy of communications of historic interest only. Nearly everything we say today, in our homes, on the streets, in our offices, is capable of being overheard by some form of listening device. Embassies abroad have to go to great lengths, unavailable to private citizens, to assure the confidentiality of all communications held within.

The important question, not answered by the majority, is whether society ought to recognize and respect private wireless telephone conversations conducted in one's home as private. I conclude it should. I therefore dissent.