**UNITED STATES, Appellee,**

**v.**

**Chief Warrant Officer Three Garland T. SULLIVAN III, 239–90–9550, United States Army, Appellant.**

**ACMR 9200223.**

U.S. Army Court of Military Review.

14 Dec. 1993.

---

For Appellant: John A. Wickham (argued) (on brief).

For Appellee: Captain Jane F. Polcen, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC (on brief). Major Kenneth T. Grant, JAGC, Captain Robert J. Walters, JAGC.

Before CREAN, Senior Judge, and WERNER, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

Contrary to his pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of sodomy, conduct

unbecoming an officer, adultery, and four specifications of conduct bringing discredit upon the armed forces, in violation of Articles 125, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 933, and 934 (1988) [hereinafter UCMJ]. The convening authority approved only that portion of the sentence that provides for a dismissal and forfeiture of $500.00 pay per month for four months. The convening authority deferred service of the confinement portion of the sentence.

The appellant asserts, *inter alia*, that the military judge erred in admitting recordings and transcripts of telephone conversations made from his cordless telephone, that the military judge erred in permitting the government to amend some of the specifications, and that the evidence is legally and factually insufficient to support the findings of guilty of some of the specifications. We disagree with all assertions and affirm.

## I. Facts

In early 1990, the appellant contacted certain magazine editors (*Playboy, Cosmopolitan,* and *Redbook*) to learn of their interest in the results of a survey on the sexual practices of wives and girlfriends of military personnel. He received positive responses from some editors and even assistance on the subjects and questions for the survey. The appellant conducted his survey for about twenty months, making approximately 2,500 calls using telephone numbers generated by a computer program. Approximately 1,300 women were contacted with about 600 women responding in some fashion to the questions.

The appellant started the calls by stating that his name was "Jim Williams" and that he was conducting a survey for "East Coast Publishing." If a man answered, the appellant hung up. If a woman answered, the first question usually asked was her age. If the women were over 50, he terminated the call. If the women's age were less than 50, he continued the conversation by asking personal questions pertaining to the women's sex practices. If the women continued to respond to questions, the appellant inquired about oral sex and masturbation questions. The appellant would also ask if the women would engage in "phone sex." [1] He received a favorable response to this question from at least two women.

The appellant received positive responses to all his questions from a Ms. B. He agreed to meet her at the local Burger King where they enjoyed a sack lunch hamburger in her car. Thereafter, the appellant and Ms. B returned to her apartment where they engaged in fellatio and sexual intercourse.

Two women testified at trial that they were called by the appellant and asked questions of a sexual nature as part of a survey. Ms. T testified that she received a phone call from a "Jim" of "East Coast Publishing." He asked her about the number of times she had sex in a week, whether she had sex with more than one partner, whether she ever masturbated or engaged in oral sex. Ms. PB testified that she received three calls from "Jim Williams" of "East Coast Publishing" who asked her age and marital status. Each time when the caller asked her how many times a week she had sex, she hung up. Neither woman complained to authorities about the telephone calls. Ms. T thought the survey was legitimate and testified that the appellant was polite and sought her permission to ask questions. The appellant did not try to solicit her for phone sex or other sexual activities. Ms. PB testified that appellant was polite, not vulgar, and did not solicit phone or other sexual acts from her. In fact, she hung up on the appellant as soon as he mentioned sex.

The appellant made his calls using a cordless telephone. There was no evidence at trial and the military judge made no

---

1. The term "phone sex" was used in the trial but not defined. However, all of the trial participants seemed to know what the term meant. This court could not find an approved definition of the term "phone sex." However, the term seems to mean the practice of talking on the telephone in such a manner as to arouse, appeal to, or gratify the lust, passion, or sexual desires of the parties to the conversation. The ways of doing this are probably as varied and numerous as the number of people that engage in this type of activity.

findings as to the manufacturer, model, or technical characteristics of the cordless telephone used by the appellant. We have admitted as an appellate exhibit an affidavit from the appellant that the telephone was an AT & T model 5320 manufactured in January 1990. Cordless telephones use radio waves to transmit and receive communications between the hand-held unit and the base unit.

A fellow aviator warrant officer from Fort Rucker, Chief Warrant Officer Three (Chief L), lived near the appellant in the local civilian community. Chief L, as a hobby, monitored radio transmissions in the area, particularly aviation traffic from Fort Rucker, using a Pro Serv 2000 scanner purchased from Radio Shack. Chief L accidently intercepted on his scanner one of the appellant's sex survey calls. Chief L became suspicious of the call and preset his scanner to lock on the frequency used by the appellant's cordless phone. He attached a recording device to his scanner to record all calls monitored by the scanner on that frequency. Chief L recorded over six hours of conversations from the appellant's cordless phone. The majority of the calls concerned the appellant conducting the sex survey. Calls unrelated to the survey made by the appellant or his wife were also monitored.

Chief L took a sample of the recorded calls to an agent of the local U.S. Army Criminal Investigation Command (hereinafter CID) to determine if the appellant was engaged in illegal activities. The agent asked for and Chief L turned over to the agent the full six hours of recordings. Based on the evidence in the recordings, the appellant and two of the women that he called were identified.

The appellant was originally charged under clause 3 of Article 134, UCMJ, with four specifications of a violation of the assimilated crime of Title 13A, Alabama Statutes, Section 11–8, making harassing telephone calls. The specifications read:

> In that ... did ... violate Title 13A, Code of Alabama, Section 11–8, assimilat-

ed into Federal Law by 18 U.S. Code Section 13, by wrongfully telephoning ... with no purpose of legitimate communication to wit: falsely identifying yourself as "Jim Walker", and attempting to conduct a survey of her sexual practices.

The military judge permitted the government to amend those four specifications, just prior to hearing evidence about the offense, to allege conduct prejudicial to good order and discipline or to allege bringing discredit upon the armed forces under clauses 1 and 2 of Article 134, UCMJ. The four specifications then read:

> In that ... did ... wrongfully telephone ... to wit: falsely identifying himself as "Jim Williams," and attempting to conduct a survey of her sexual practices, such conduct being to the prejudice of good order and discipline of the Armed Forces or of a nature to bring discredit to the Armed Forces.

## II. Admission of the Taped Conversations

The appellant asserts that the military judge erred in admitting into evidence the tape recordings of his phone conversations made by Chief L and the transcriptions made of those calls. He asserts that in monitoring and recording the telephone conversations, Chief L conducted an illegal search and seizure under the Fourth Amendment of the United States Constitution and Military Rules of Evidence 311 and 317 [hereinafter Mil.R.Evid.] and also violated the Electronic Communications Privacy Act of 1986 [2] [hereinafter the Wiretap Act].

■ The general rule of the Fourth Amendment and Military Rules of Evidence 311 and 317, the military implementation of the Fourth Amendment, is that evidence obtained as a result of an unlawful search and seizure by a person acting in a governmental capacity is inadmissible if the accused had an adequate interest in the property searched or seized. The burden of showing that the evidence was not seized

---

**2.** 18 U.S.C. §§ 2510–2521, specifically §§ 2510 and 2511.

as a result of an unlawful search or seizure rests with the prosecution. Mil.R.Evid. 311(e). However, the burden of establishing "adequate interest" rests with the accused. *United States v. Miller,* 13 M.J. 75, 77 (C.M.A.1982) citations omitted; *United States v. Ayala,* 22 M.J. 777, 783 (A.C.M.R. 1986). Adequate interest is shown when the search or seizure intrudes into a person's expectation of privacy in an unreasonable way under the facts of the case, or the accused has a lawful interest in the property seized, or the accused's interest rests on cognizable constitutional grounds. Mil.R.Evid. 311(a)(2). The question of whether the accused has shown a reasonable expectation of privacy under the circumstances is a question of law. *Schowengerdt v. United States,* 944 F.2d 483, 488 (9th Cir.1991); *United States v. Jefferson,* 925 F.2d 1242, 1248–49 (10th Cir.1991). A search occurs when the government infringes on an expectation of privacy that society is prepared to consider reasonable. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Oliver v. United States,* 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984).

■ We find that Chief L did not act in a governmental capacity. When he first intercepted the telephone calls of the appellant, Chief L was scanning the airways to pick up aircraft radio traffic in the area of Fort Rucker. He did not intend to pick up cordless telephone transmissions. When he did hear the appellant's conversations, he knew from his knowledge of radio transmission frequencies that he was intercepting a cordless telephone conversation. On his own, believing that he was overhearing an improper telephone conversation, Chief L targeted these conversations by presetting his scanner to the cordless telephone frequency of the transmissions and recorded them. He alerted law enforcement officials to the telephone conversations by providing them a sample of the calls he recorded. Only after hearing a sample did the law enforcement officials ask for all the recorded conversations. All of the recordings used against the appellant were made by Chief L before notifying the law en-

forcement officials. Chief L did not record or monitor any telephone conversation at the request of law enforcement officials.

■ We further find that the appellant has not established that he had a reasonable expectation of privacy in the calls made over his cordless telephone. The early cases that examined the intercept of cordless telephone or other transmission over radio waves concluded that there was no reasonable expectation of privacy in such transmissions. *See Tyler v. Berodt,* 877 F.2d 705 (8th Cir.1989); *State v. Smith,* 149 Wis.2d 89, 438 N.W.2d 571 (1989); *State v. Delaurier,* 488 A.2d 688 (R.I.1985); *State v. Howard,* 235 Kan. 236, 679 P.2d 197 (1984). Usually pure radio wave transmissions do not have an expectation of privacy because "... radio waves are more analogous to carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by wire." *United States v. Hall,* 488 F.2d 193, 196 (9th Cir.1973). The basic holding of these cases was that based on the cordless telephone technology at the time and the ease of monitoring the transmission, there was no reasonable expectation of privacy. However, in the most recent case, *United States v. Smith,* 978 F.2d 171 (5th Cir.1992), the court determined that cordless telephone technology has changed and improved dramatically so that under certain circumstances and with certain phones, there could be a reasonable expectation of privacy in a conversation using a cordless telephone. The determination is not whether it is conceivable that the transmission can be intercepted but whether it is reasonable to expect privacy in the transmission. We agree with this opinion and hold that an accused may establish that he had an "adequate interest" in a conversation over a cordless telephone by establishing that he had a reasonable expectation of privacy.

In this case, the military judge made detailed findings of fact as to the appellant's expectation of privacy when using his cordless telephone. The military judge did not base his findings on the technology

of the telephone used by the appellant. The military judge did determine that the appellant did not have a reasonable or justifiable expectation of privacy in the cordless telephone transmission because of his specific knowledge of radio wave transmissions. The military judge found that the appellant is a college graduate and an experienced helicopter pilot instructor. As a pilot, he is knowledgeable of radio wave transmissions and knew radio communication procedures. He knew that radio transmissions not encrypted or scrambled could be received by any receiver set to the same frequency. Thus, it was within the actual knowledge of the appellant that anyone within range of his cordless telephone with a receiving instrument set to the same frequency as his cordless telephone could monitor his telephone conversations. We agree with these findings of fact and the conclusion of the military judge that the appellant did not establish that he had a reasonable expectation of privacy in his cordless telephone conversations.

Based on the findings that Chief L was not acting in a governmental capacity and that the appellant did not have an adequate interest in the phone conversation, we hold that the military judge properly admitted the recordings of the appellant's cordless telephone conversations as not being a violation of the Fourth Amendment or Mil. R.Evid. 311 and 317.

■ We must now consider whether the Wiretap Act provided the appellant with protection for his cordless telephone conversations beyond that provided by the Fourth Amendment. The Wiretap Act prohibits the nonconsensual interception of wire, oral, and electronic communications without prior judicial approval. Persons who willfully intercept any of these types of communications are subject to criminal prosecution or monetary damages. 18 U.S.C. § 2511. The Wiretap Act also has an exclusionary rule that prohibits the introduction into evidence of illegally inter-

cepted wire, oral or electronic communications. 18 U.S.C. § 2515. The Wiretap Act specifically excludes cordless telephones from its definition of wire or electronic communications. 18 U.S.C. § 2510(1).

Numerous state and federal courts have held that cordless telephone transmissions are not wire or electronic communications and the interception of a cordless telephone conversation is not a violation of the Wiretap Act. *United States v. Smith*, 978 F.2d 171 (5th Cir.1992); *Tyler v. Berodt*, 877 F.2d 705 (8th Cir.1989); *State v. Smith*, 149 Wis.2d 89, 438 N.W.2d 571 (1989); *Edwards v. State Farm Insurance Company*, 833 F.2d 535 (5th Cir.1987); *Edwards v. Bardwell*, 632 F.Supp. 584 (M.D.La. 1986), *aff'd*, 808 F.2d 54 (5th Cir.1986); *State v. Delaurier*, 488 A.2d 688 (R.I.1985); *State v. Howard*, 235 Kan. 236, 679 P.2d 197 (1984). Cordless telephone conversations are also not oral communications as defined by the statute. *United States v. Smith*, 978 F.2d at 175. We hold that Chief L's interception of the appellant's conversations on his cordless telephone did not violate the Wiretap Act and the exclusionary rule of that act did not preclude admission of those conversations into evidence.

The appellant argues that even if a cordless telephone was not included in the proscriptions of the Wiretap Act, it should be included because a Congressional task force in May 1991 recommended that the cordless telephone be included for protection under the act. While Congress may have considered amending the act, it has not done so and a conversation on a cordless telephone is not presently protected under the act.

### III. Amendment of the Specifications

■ The appellant was initially charged under the Assimilated Crimes clause 3 of Article 134, UCMJ, with four specifications of violating the Alabama state statute by making harassing telephone calls. Title 13A, Alabama Statutes, Section 11–8.[3] Pri-

---

**3.** The statute reads:

(B) Harassing communications.—(1) A person commits the crime of harassing communi-

nications if, with the intent to harass or alarm another person, he:
a. Communicates with a person, anonymously or otherwise, by telephone, telegraph,

or to trial, the military judge, over the objection of the appellant, permitted the government to amend these specifications to allege only a simple disorder to the prejudice of good order and discipline or service discrediting, under clauses 1 and 2 of Article 134, UCMJ.[4]

The original specification stated that the appellant violated Alabama law by wrongfully telephoning certain named women with no purpose of legitimate conversation by falsely identifying himself as "Jim Williams" and conducting a survey of sexual practices allegedly for East Coast Publishing Company, a nonexistent organization. The amended specifications alleged that the appellant wrongfully telephoned the women named in each specification by falsely identifying himself as "Jim Williams" and attempting to conduct a survey of their sexual practices, such conduct being prejudicial to good order and discipline and service discrediting.[5] The appellant alleges the military judge erred in permitting the amendment because the amendment misled the appellant, required him to defend against new elements, and did not give him fair notice of the change.

After arraignment and before findings, the military judge may permit minor changes to any charge or specification as long as no substantial right of the accused is prejudiced. Rule for Court–Martial 603(c) [hereinafter R.C.M.]. Minor changes are any except those that add a party, offense, or substantial matter not fairly included in the original charge or specification or which are likely to mislead the accused as to the offense charged. Minor changes may include those which reduce the seriousness of the offense. R.C.M. 603(a). The appellant must also show that he was prejudiced by the amended specification. *United States v. Brown,* 34 M.J. 105, 110 (C.M.A.1992); *United States v. Johnson,* 12 U.S.C.M.A. 710, 31 C.M.R. 296, 1962 WL 4416 (1962).

The alleged improper actions of the appellant, that is, falsely identifying himself and attempting to conduct a survey of sexual practices for a fictitious company, were substantially unchanged under the amended specification. None of the changes added a party, an offense or matters not substantially included in the original specification. The appellant was not misled and he has not shown that he was prejudiced by the change.[6] Accordingly, we hold that the military judge did not err in permitting the government to amend the Specification under Charge I.

### IV. Sufficiency of the Evidence

■ The appellant alleges that the evidence is not legally and factually sufficient

---

mail or any other form of written or electronic communication, in a manner likely to harass or cause alarm; or

b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication; or

c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.

Nothing in this section shall apply to legitimate business telephone communications.

4. The military judge found the appellant guilty by exceptions and substitutions only of conduct to bring discredit on the armed forces. He did not find him guilty of conduct to the prejudice of good order and discipline.

5. The law is unclear whether an accused charged with violating an assimilated state statute under clause 3 of Article 134, UCMJ, can be convicted of conduct prejudicial to good order and discipline or service discrediting under clauses 1 and 2 of Article 134, UCMJ. *See United States v. Dallman,* 32 M.J. 624, 630 n. 6

(A.C.M.R.1991), *aff'd in part, rev'd in part on other grounds,* 34 M.J. 274 (C.M.A.1992); *United States v. Almendarez,* 46 C.M.R. 814, 816, 1972 WL 14501 (A.C.M.R.1972).

6. The military judge determined that the maximum punishment for each offense under the Alabama statute was confinement for three months and a fine of $500.00. He further found that if the appellant was found guilty of conduct prejudicial to good order and discipline, the maximum punishment would be confinement for one month and forfeiture of two-thirds pay per month for one month, an amount in excess of $500.00. If the appellant was found guilty of service discrediting conduct, the maximum punishment would be confinement for four months and forfeiture of two-thirds pay per month for four months, an amount in excess of $500.00. The military judge, in permitting the amendment, however, did limit the maximum punishment for findings of guilty under either a prejudice to good order and discipline theory or service discrediting theory to no more than that permitted under the Alabama statute.

to support the findings of guilty of conduct service discrediting as to Ms. T and Ms. PB.

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in a light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).

Testing for legal sufficiency, we hold that, viewing the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements of the offense beyond a reasonable doubt. Notwithstanding the impression of the two women, the fact finder could reasonably conclude that the appellant made the calls for the purpose of gaining sexual favors and that such conduct was service discrediting. Testing for factual sufficiency, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt that the appellant's conduct was service discrediting.

We have carefully considered the other issues raised by the appellant and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WERNER and Judge GONZALES concur.